_____

Nos. 94-3687/94-3849
_____

John J. Joubert,                    *
                                    *
    Appellee/Cross-Appellant,       *  On Appeal from the United States
                                    *  District Court for the
    v.                              *  District of Nebraska.
                                    *
Frank X. Hopkins,                   *
                                    *
    Appellant/Cross-Appellee.       *
                         _____

            Submitted:  June 12, 1995

             Filed:  January 25, 1996
                         _____

Before BEAM, BRIGHT, and MURPHY, Circuit Judges.
                         _____

BEAM, Circuit Judge.


    John Joubert entered guilty pleas to two counts of first-
degree murder.  He received a death sentence on each count.  After
pursuing direct and collateral relief in the state courts, he filed
a petition for a writ of habeas corpus in federal district court.
The district court found that Mr. Joubert's death sentences were
based on an unconstitutionally vague statutory aggravating factor
and granted the writ.  The State of Nebraska appeals.  Joubert
cross-appeals the district court's denial of other claims presented
in his habeas petition.  We affirm in part and reverse in part.


**I. BACKGROUND**


    In the fall of 1983, Joubert, a recent transferee to Offutt
Airforce Base, began to act out his fantasies of stabbing young
boys to death.  Early one September morning, he went hunting for a
victim.  He saw 13-year-old Danny Eberle delivering papers.
Joubert grabbed, gagged, and bound Danny, put him in the trunk of

a car, and took him to a remote area.  He stripped Danny to his
underwear, sequentially untying and retying the boy's bonds.
Danny's gag worked loose and he asked Joubert if he was going to
die.  When Joubert said yes, Danny tried to roll away, but Joubert
stabbed him in the back, pinning him to the ground with the knife.
While pinned, Danny promised not to tell if Joubert would take him
to a hospital.  Joubert considered the proposition, but decided
that Danny would probably get him in trouble if allowed to live.
So, he stabbed and sliced the boy until he died from loss of blood.

Several months later, Joubert again went out in the predawn to
hunt for a victim.  He saw 12-year-old Christopher Walden walking
to school.  He displayed his knife to Christopher and told him to
come along.  Once in the car, Joubert made Christopher get down on
the floor boards out of sight.  When the boy began to cry, Joubert
considered releasing him, but decided against it for fear of being
caught.  Joubert took Christopher to a secluded spot and instructed
him to strip to his underwear and to lay down on his back.  Because
of the snow, the boy balked at laying down, so Joubert "encouraged"
him by putting his hands around Christopher's neck and forcing him
down.  Joubert continued to strangle Christopher, but his hands got
cold, so he took his knife and started stabbing and slicing the
boy, finally cutting his throat.  Christopher remained cognizant
for some time, and then gradually lapsed into a coma and died from
loss of blood.  He was found with a figure resembling a plant
carved into his torso.

Joubert went hunting again one January morning.  He found a
preschool teacher.  She became suspicious while he observed her
from his car and wrote down his license plate number.  When he
approached her, and tried to force her into a school room while
threatening to kill her, she burst past him and called the police.
A license check led to Joubert.  While being questioned about the
school incident, Joubert began to make spontaneous admissions as to
the murders of the two boys.  After waiving his rights, Joubert

confessed to the two murders, giving details unknown to the public which were corroborated by the crime scenes.  He also provided police with details they had been unable to reconstruct, which were later corroborated.  The police subsequently discovered physical evidence further linking Joubert to the murders.

Joubert was charged with two counts of first-degree murder. Before trial, Joubert entered guilty pleas pursuant to a plea bargain.  In exchange for the pleas, the state agreed not to present evidence to the sentencing panel that Joubert had previously murdered a young boy in Maine.[1]  After a sentencing hearing, in which the state adhered to its bargain, Joubert was sentenced to death on both counts.  In imposing the death penalty, the sentencing panel found two statutory aggravating factors in regard to the murder of Danny Eberle:  1) that he was killed in order to conceal the perpetrator's identity (Nebraska statutory aggravator 29-2523(1)(b)); and 2) that the murder was both "especially heinous, atrocious, [and] cruel" and represented "exceptional depravity" as those terms were defined at that time (Nebraska statutory aggravator 29-2523(1)(d)).[2]  In regard to the murder of Christopher Walden, the panel found three statutory aggravating factors:  1) that Christopher was killed in order to conceal the perpetrator's identity; 2) that the murder was both "especially heinous, atrocious, [and] cruel" and represented

---

[1]Joubert was later convicted of that murder in unrelated proceedings.  State v. Joubert, 603 A.2d 861 (Me. 1992).

[2]Under Nebraska law, statutory aggravator 29-2523(1)(d) has two prongs.  The first is that the murder was "especially heinous, atrocious, [and] cruel" as that phrase has been narrowed by the Nebraska Supreme Court.  The second is that the murder "manifested exceptional depravity by ordinary standards of morality and intelligence" as that phrase has been narrowed by the Nebraska Supreme Court.  Proving either prong beyond a reasonable doubt establishes the existence of aggravator 29-2523(1)(d).  See, e.g., State v. Reeves, 476 N.W.2d 829, 838 (Neb. 1991), cert. denied, 113 S. Ct. 114 (1992);  State v. Joubert, 399 N.W.2d 237, 249 (Neb. 1986), cert. denied, 484 U.S. 905 (1987).

-3-

"exceptional depravity;" and 3) that at the time of the murder, the perpetrator had "a substantial history of serious assaultive or terrorizing criminal activity" (Nebraska statutory aggravator 29-2523(1)(a)).

After Joubert's direct and postconviction appeals were denied by the state courts, he filed a petition for habeas corpus in federal district court alleging numerous grounds for relief including:  1) his death sentences were infirm because "exceptional depravity" is an unconstitutionally vague aggravator;  2) the sentencing panel improperly applied the aggravating circumstance relating to a history of serious assaultive criminal activity to Joubert;  3) the sentencing panel erred in finding that Joubert killed his victims to avoid detection;  4) the trial judge improperly injected himself into the plea bargain process;  5) his counsel was constitutionally ineffective for failing to inform him that the trial court was willing to accept a conditional plea; and 6) Nebraska's death penalty process is facially discriminatory and discriminatory as applied, because it is facially arbitrary and because prosecutorial discretion results in uneven application.

The district court granted relief on the claim that "exceptional depravity" is an unconstitutionally vague aggravating circumstance, and denied relief on Joubert's other claims.  The State of Nebraska appeals, arguing the writ was improperly granted, and that even if properly granted, the district court improperly limited the state's options as to how to respond to the writ. Joubert appeals the district court's denial of those other claims listed above.

**II. DISCUSSION**

   **A. "Exceptional Depravity" Statutory Aggravator**

In granting relief, the district court found that Joubert's vagueness claim had been properly presented to the state courts. Alternatively, it found that any procedural bar was excused under the cause and prejudice standard. Finally, the district court found that the "exceptional depravity" prong of aggravator 29-2523(1)(d) was unconstitutionally vague as it was defined at the time of Joubert's sentencing. Generally, the existence of the "atrocious, heinous, [and] cruel" prong (which had been constitutionally narrowed at the time it was applied to Joubert) would suffice to support the application of aggravator 29-2523(1)(d) independently of any infirmity in the "exceptional depravity" prong. See supra n.2. In this case, however, the sentencing panel explicitly relied more heavily on the "exceptional depravity" prong than on the "heinous, atrocious, [and] cruel" prong to find the existence of the aggravator. The district court found that such greater reliance on the unconstitutionally vague prong rendered the death sentence infirm under Stringer v. Black, 503 U.S. 222, 232 (1992) (use of an invalid aggravator in a weighing state amounts to an impermissible thumb on death's scale). While we might agree with the district court's Stringer concerns, we reverse on other grounds.

## 1. Procedural Bar

In the absence of cause and prejudice, or a sufficient showing of likely actual innocence, a federal habeas court may consider only those issues which have been raised and fairly presented to the state courts. Sawyer v. Whitley, 112 S. Ct. 2514, 2518-19 (1992). A claim has been fairly presented when a petitioner has properly raised the "same factual grounds and legal theories" in the state courts which he is attempting to raise in his federal habeas petition. E.g., Forest v. Delo, 52 F.3d 716, 719 (8th Cir. 1995), Keithley v. Hopkins, 43 F.3d 1216, 1217 (8th Cir.), cert. denied, 115 S. Ct. 2620 (1995); Flieger v. Delo, 16 F.3d 878, 884 (8th Cir.), cert. denied, 115 S. Ct. 355 (1994).

-5-

The district court found that although Joubert had not specifically raised the vagueness claim in his direct appeal or in his state postconviction proceedings, the vagueness claim was nonetheless fairly presented. It concluded that Joubert's argument to the state court that there was insufficient evidence to support applying the "exceptional depravity" factor in his case encompassed the claim of unconstitutional vagueness. Specifically, the district court found that "a Fourteenth Amendment due process issue is inherent in the analysis of the [insufficient evidence] issue."[3] Joubert v. Hopkins, No. 8:CV91-00350, mem. op. at 97 (D. Neb. Oct. 11, 1994). Therefore, the district court held that there was no procedural bar.

We have closely examined Joubert's arguments to the state court, and nowhere in his discussion of the "exceptional depravity" circumstance does he mention either the Eighth or Fourteenth Amendment or unconstitutional vagueness. Just as a claim that there is insufficient evidence to support a conviction does not carry within it a challenge to the constitutionality of the statute under which one was convicted, so an argument that there is insufficient evidence to support the application of an aggravator does not "inherently" subsume an argument that the aggravator itself is unconstitutional, much less that it is unconstitutional on vagueness grounds. One argument is fact-based, the other is legal, and they are completely different. Because Joubert did not present the same facts and legal theory to the state courts that he now raises to the federal courts, the vagueness claim was not fairly presented and is procedurally barred. See Branscomb v. Norris, 47 F.3d 258, 261 (8th Cir.) (rejecting argument that competency claim "essentially" considered in denial of motion for

---

[3]Despite the district court's characterization of the issue, in the context of capital punishment, vagueness is properly analyzed under the Eighth, not the Fourteenth, Amendment. See Maynard v. Cartwright, 486 U.S. 356, 360-61 (1988).

-6-

independent psychiatric evaluation), cert. denied, 115 S. Ct. 2260 (1995).

Joubert also argues there is no bar because the issue was considered by the last state court to consider his case. To make this claim, he misconstrues a concurrence which mentions the "exceptional depravity" aggravator only in the context of asserting that it is not a separate prong of a two-prong aggravator, but part and parcel of a unitary "especially heinous, atrocious, [and] cruel" aggravator which was proved beyond a reasonable doubt. State v. Joubert, 399 N.W.2d 237, 253-58 (Neb. 1986), cert. denied, 484 U.S. 905 (1987) (Joubert). The concurrence does not consider the vagueness of "exceptional depravity." Joubert's argument is without merit.

Joubert further argues that the issue is not barred because the Nebraska Supreme Court exercised its responsibility to review his death penalty, and thus necessarily considered even defaulted errors. While the scope of mandatory state court review may be broad enough to revive a defaulted claim, the extent of that review is a question of state law. See Ake v. Oklahoma, 470 U.S. 68, 74-75 (1985) (state court review for "fundamental trial error" includes otherwise waived constitutional errors); LaRette v. Delo, 44 F.3d 681, 687 (8th Cir. 1995) (scope of mandatory review is a question of state law, issues falling outside that scope may not be deemed presented to the state courts). Nebraska law requires its supreme court to examine the facts of a capital case including those underlying aggravating and mitigating circumstances, the charges filed, the crime of conviction, the sentence, and the proportionality of that sentence compared with those imposed in similar capital crimes in Nebraska. Neb. Rev. Stat. §§ 29-2521.01-.03 (Reissue 1989 & Supps. 1992-94). The legislature's explicit concern is to promote fairness and uniformity and to guard against local prejudice and hysteria in the imposition of the death penalty. The resultant review scheme is factually oriented and

-7-

directs the Nebraska Supreme Court to ascertain that the facts support the charges, conviction, and penalty in any given capital case, and that such penalty is not disproportionate to those meted out in similar cases.  It does not impose on the Nebraska Supreme Court the duty to recognize and to raise, sua sponte, federal constitutional issues.  See Nave v. Delo, 22 F.3d 802, 815-16 (8th Cir. 1994) (factually oriented state mandatory review scheme did not impose duty to reach federal constitutional claims sua sponte).

Finally, Joubert argues that the vagueness issue is not barred because it is plain error, and because appellate courts in Nebraska reserve the right to note plain error regardless of whether it has been preserved.  Even assuming the right to conduct plain error review equates with the duty to do so, a proposition about which we state no opinion, this argument fails.  At the time of Joubert's sentencing, the Nebraska Supreme Court had attempted several times to constitutionally narrow the "exceptional depravity" prong of aggravator 29-2523(1)(d) through its case law.  See Moore v. Clarke, 904 F.2d 1226, 1234-35 (8th Cir. 1990) (F. Gibson, dissenting) (discussing Nebraska Supreme Court's pre-Palmer cases narrowing "exceptional depravity"), cert. denied, 504 U.S. 930 (1992).  A state supreme court may cure a defectively vague aggravating circumstance through adoption of an acceptably narrowed construction.  Proffitt v. Florida, 428 U.S. 242, 255-56 (1976); see also Gregg v. Georgia, 428 U.S. 153, 201 (1976) (no reason to assume the Georgia Supreme Court will not adopt and apply a constitutionally narrowed construction of facially vague aggravator).  Because the Nebraska Supreme Court had attempted to narrow this aggravator at the time of Joubert's sentencing, albeit unsuccessfully, the application of that narrowed definition to Joubert at his sentencing was not plain error.  Thus, there was no plain error for the Nebraska Supreme Court to review.  In the absence of cause and prejudice, Joubert's vagueness claim is procedurally barred.

## 2. Cause and Prejudice

### i. Cause

A federal habeas court may consider a petitioner's procedurally defaulted claims if the petitioner establishes both cause for and prejudice from his default. Wainwright v. Sykes, 433 U.S. 72 (1977); see also Engle v. Isaac, 456 U.S. 107, 126-30 (1982) (discussing the concerns animating the application of the cause and prejudice test to procedural defaults in habeas cases). To establish cause, a petitioner must show that some objective factor external to the defense prevented him from presenting or developing the factual or legal basis of his constitutional claim. Murray v. Carrier, 477 U.S. 478, 488-89 (1986). Interference by the state, ineffective assistance of counsel, and conflicts of interest are examples of factors external to the defense which prevent a petitioner from developing the factual basis of his claim. See Amadeo v. Zant, 486 U.S. 214, 222 (1988) (interference); Coleman v. Thompson, 501 U.S. 722, 754 (1991) (ineffective assistance); Jennings v. Purkett, 7 F.3d 779, 782 (8th Cir. 1993) (conflict of interest). Legal novelty may be cause for failure to present a legal claim for which the factual basis is readily available. Reed v. Ross, 468 U.S. 1, 13-14 (1984).

The district court found that even if Joubert had defaulted on the vagueness claim in the state court, he had shown cause for his default. Joubert persuaded the district court that although federal law as to the vagueness of the "exceptional depravity" aggravator was well settled at the time of his state court actions, the lack of explicit state legal precedent on the question established cause. According to Joubert, this lack of state precedent on the federal question rendered the "factual basis" of the claim unavailable at the time of his state court proceedings. This argument is flawed.

First, there is no question that the argument as to the unconstitutional vagueness of "exceptional depravity" is not legally novel, and was not legally novel at the time of Joubert's state court proceedings. Legal novelty constitutes cause only if the claim is "so novel that its legal basis is not reasonably available to counsel." Ross, 468 U.S. at 16. The legal basis for arguing that "exceptional depravity" was impermissibly vague was readily available by the time of Joubert's first appeal in 1985.

At that time, Furman v. Georgia, 408 U.S. 238 (1972), which invalidated all death penalty procedures then in place as arbitrary and impermissibly vague, was thirteen years old. The case of Godfrey v. Georgia, 446 U.S. 420, 431 (1980), which found an "outrageously or wantonly vile, horrible, or inhuman" aggravator to be unconstitutionally vague, was five years old. Later, in Maynard v. Cartwright, 486 U.S. 356, 362-64 (1988), the Supreme Court found that there was no functional difference between an "especially heinous, atrocious, or cruel" aggravator and the unconstitutionally vague aggravator in Godfrey. Maynard, in turn, was found to have been dictated by precedent in Stringer v. Black, 503 U.S. 222, 228 (1992), and thus not a new rule.[4] See Teague v. Lane, 489 U.S. 288, 301 (1989) (a new rule is one which is not dictated by precedent[5]). If holding that "outrageously or wantonly vile, horrible, or inhuman" is an unconstitutionally vague aggravator (Godfrey, 1980) dictates finding that "especially heinous, atrocious, or cruel" (Maynard, 1988) is also unconstitutionally vague, the argument as to the impermissible vagueness of

_____

[4]With limited exceptions, a new rule will not be applied retroactively in federal habeas litigation. Teague v. Lane, 489 U.S. 288 (1989).

[5]Precedent dictates the result in a given case when the outcome is not "susceptible to debate among reasonable minds." Butler v. McKellar, 494 U.S. 407, 415 (1990). Thus, Maynard was found to be dictated by existing precedent (Godfrey) to such an extent that reasonable minds could not disagree as to the outcome.

-10-

"exceptional depravity," even as then narrowed by the Nebraska Supreme Court, was certainly not "so novel that its legal basis was not reasonably available to counsel" at the time of Joubert's appeal in 1985.

Joubert, however, mixing apples and oranges, claims that the Nebraska state courts' failure to address the issue by the time of his appeal rendered the argument "factually" unavailable to him. He mistakenly relies on Blair v. Armontrout, 916 F.2d 1310, 1325 (8th Cir. 1990) as support for this proposition. Blair does not stand for the proposition that lack of state precedent about an established federal issue amounts to cause. Rather, Blair recognizes that uncertainty as to state law itself can constitute cause for failure to raise a constitutional claim. More particularly, Blair's equal protection and ex post facto arguments were unavailable to him until the Missouri Supreme Court held that one of its decisions was to be applied prospectively in some circumstances and retroactively in others, including Blair's. See Blair, 916 F.2d 1328-31; State v. Goddard, 649 S.W.2d 882 (Mo. 1983) (en banc). Thus, Blair had no constitutional complaint until the Missouri Supreme Court created the rule in question.

Joubert's situation is diametrically opposed to Blair's. An aggravator which was facially vague, and arguably so even as narrowed, under then existent and controlling federal precedent had been applied in Joubert's sentencing. No act of the Nebraska Supreme Court was needed to create or to perfect his constitutional complaint. The mere fact that the Nebraska Supreme Court had not decided the issue, or even a likelihood that they would decide it against him if he raised it, did not render the issue "factually" unavailable to him and cannot constitute cause. See Engle v. Isaac, 456 U.S. 107, 130-31 (1982) (lack of state precedent on nonnovel constitutional issue is not cause; such a rule would be contrary to the principles supporting Wainwright v. Sykes). Thus, Joubert has not shown cause for his default.

-11-

### ii. Prejudice

While the district court made no explicit finding that Joubert was prejudiced by the application of the "exceptional depravity" prong in his sentencing, it apparently assumed so because, after finding cause, it proceeded directly to the merits of Joubert's claim. It is clear, however, from the district court's discussion of the merits that it did consider Joubert to be prejudiced. As mentioned, the district court noted that the sentencing panel had explicitly relied more heavily on the "exceptional depravity" prong than on the "especially heinous, atrocious, [and] cruel" prong in finding the existence of aggravator 29-2523(1)(d). Thus, even though a finding of either prong will normally suffice to establish the existence of the aggravator, under Stringer, 503 U.S. at 232, the district court feared that the heavy reliance on the "exceptional depravity" prong placed an impermissible thumb on death's scale. See Williams v. Clarke, 40 F.3d 1529, 1538-42 (8th Cir. 1994) (Stringer mandates harmless error analysis where both independent prongs of § 29-2523(1)(d) applied if one prong was constitutionally invalid). However, because Joubert has not shown cause, we need not decide whether any unconstitutional "thumb" is enough to establish the prejudice required by Wainwright, 433 U.S. at 87. See United States v. Frady, 456 U.S. 152, 166-69 (1982) (the prejudice required for a defaulted claim to undermine constitutionality of final judgment on collateral review can be higher than that required to merit reversal on same claim on direct review).

### iii. Miscarriage of Justice

Joubert also argues that his procedural default should be excused to prevent a fundamental miscarriage of justice. However, he does not profess that he is actually innocent of the murders of these boys, nor does he attempt to make the requisite showing under

-12-

Schlup v. Delo, 115 S. Ct. 851, 867 (1994) (petitioner must present new evidence showing that a constitutional violation has probably resulted in the conviction of one who is actually innocent). Neither does he argue, nor make any showing, that he is actually innocent of the death penalty under Sawyer v. Whitley, 112 S. Ct. 2514, 2523 (1992) (petitioner must show by clear and convincing evidence that but for constitutional error no reasonable jury would have found him eligible for the death penalty).

The sentencing panel found several separate statutory aggravating circumstances for each murder. It also found that the independent "especially heinous, atrocious [and] cruel" prong of aggravating circumstance 29-2523(1)(d) had been proved beyond a reasonable doubt. Therefore, the specter that the vagueness of the "exceptional depravity" prong of 29-2523(1)(d) may have worked to Joubert's disadvantage does not amount to clear and convincing evidence that but for constitutional error no reasonable jury would have found him eligible for the death penalty. Thus, there is no fundamental miscarriage of justice to lift the procedural bar.

### 3. Merits

Even though Joubert's claim of vagueness of the "exceptional depravity" prong of 29-2523(1)(d) is procedurally barred, it would not be inappropriate to discuss the merits of the claim, this being a death penalty case. In this instance, as we explain, we decline to do so.

We recognize that in a weighing state,[6] generally, a state appellate court may cure a constitutional deficiency arising from improper applications or limitations of aggravating or mitigating circumstances in a capital case by engaging either in reweighing, or in traditional harmless error analysis. Clemons v. Mississippi,

---

[6]See Williams, 40 F.3d at 1535 (Nebraska is a weighing state).

494 U.S. 738, 754 (1990). Although the district court correctly determined that the definition of "exceptional depravity" applied at Joubert's sentencing was unconstitutionally vague, we note that the Nebraska Supreme Court did apply a narrower definition of "exceptional depravity" than that in effect at the time of sentencing when performing its mandated review to assure that the facts in Joubert's case supported the sentence.[7] See Joubert, 399 N.W.2d at 251. That narrowed definition is clearly constitutional. Walton v. Arizona, 497 U.S. 639, 654-55 (1990);[8] see also Moore v. Clarke, 951 F.2d 895, 896-97 (8th Cir. 1991) (Moore II). Using that narrowed definition, the Nebraska Supreme Court found the "exceptional depravity" prong to be established beyond a reasonable doubt. Joubert, 399 N.W.2d at 251. If the Nebraska Supreme Court then lawfully reweighed the aggravating and mitigating circumstances underlying Joubert's death penalties, any possible constitutional defect in Joubert's sentence was arguably cured.

However, we decline to address either whether the Nebraska Supreme Court had the authority to reweigh under the circumstances here present,[9] or, if it had such authority, whether it did indeed

---

[7]The district court, in granting habeas relief, did not acknowledge that the Nebraska Supreme Court had applied a properly narrowed definition on appeal.

[8]In Walton, the United States Supreme Court held that the test the Arizona Supreme Court had developed in State v. Gretzler, 659 P.2d 1, 11-12 (Ariz.), cert. denied, 461 U.S. 971 (1983) for its "especially depraved manner" aggravating circumstance overcame any constitutional vagueness concerns. See Lewis v. Jeffers, 497 U.S. 764, 776-78 (1990) (Walton decision established validity of entire 5-factor Gretzler test). The Nebraska Supreme Court adopted the Gretzler test as its own when narrowing "exceptional depravity" in State v. Palmer, 399 N.W.2d 706, 731-32 (Neb. 1986), cert. denied, 484 U.S. 872 (1987). And it is that narrowed test which the Nebraska Supreme Court said it applied to Joubert. Joubert, 399 N.W.2d at 251.

[9]Under certain circumstances, state appellate court reweighing may result in a deprivation of due process. Clemons, 494 U.S. at 754 & n.5; Rust v. Hopkins, 984 F.2d 1486 (8th Cir.), cert.

-14-

reweigh and cure Joubert's sentence.  We so decline because the parties did not clearly brief and argue these issues,[10] because it is not clear to us that the Nebraska Supreme Court indeed engaged in a deliberate reweighing, and because any error as to the application of the "exceptionally depraved" prong was harmless beyond a reasonable doubt.

### 4. Harmless Error

Regardless of the effectiveness of any arguable state court appellate reweighing, we find any error in the application of the "exceptional depravity" prong at sentencing to have been harmless beyond a reasonable doubt.  See Williams, 40 F.3d at 1539-41 (federal courts must conduct harmless error analysis before issuing the writ).  Because the Nebraska Supreme Court simply applied a narrowed definition of "exceptional depravity" in its Joubert decision, without considering whether there was constitutional error at sentencing, we apply Chapman analysis.  See id. (In habeas, the more deferential Brecht harmless error standard generally is applied to constitutional errors considered harmless by state courts, but the strict Chapman standard is used where a state court has not applied Chapman analysis in the first instance.).  Under Chapman, we must determine whether the error, if any, is harmless beyond a reasonable doubt.  Williams, 40 F.3d at 1541.

To perform this analysis, we must determine whether the facts support the application of aggravating factor 29-2523(1)(d) without

denied, 113 S. Ct. 2950 (1993).

[10]The author of this opinion, speaking for himself only, does not agree with the dissent's contention, infra, at 28, that "Appellant Warden Hopkins does not suggest that the Nebraska Supreme Court cured [any] constitutional defect by reweighing on direct appeal."  In this regard, see Appellant's Brief, pp. 7, 28-34.

-15-

consideration of the "exceptional depravity" prong, and if so (or if not) whether, in view of all the other aggravating and mitigating circumstances found to be present, the sentence would have been the same beyond a reasonable doubt. See id. (constitutional harmless error analysis entails de novo review of the record). The other prong of aggravator 29-2523(1)(d), "especially heinous, atrocious, [and] cruel," had been constitutionally narrowed at the time of Joubert's sentencing. Harper, 895 F.2d at 479. A finding that a murder was "especially heinous, atrocious, [and] cruel" independently supports the application of aggravator 29-2523(1)(d). See supra note 2. This prong considers the crime from the victim's point of view. Joubert, 399 N.W.2d at 249. To fall within this prong, the murder in question must involve torture, sadism, sexual abuse, or the infliction of extreme suffering on the victim. Harper, 895 F.2d at 478. Murders which are unnecessarily torturous fall within this category. Id. We look to the facts to decide whether aggravator 29-2523(1)(d) would have been found to exist regardless of the "exceptional depravity" prong.

Considering the case of Danny Eberle, the evidence shows that after being bound, gagged, and transported like a sack of flour in the trunk of a car, Danny was stripped to his underwear, told he was going to be killed, held pinned by a knife in the back as he desperately tried to bargain for his life, and then butchered as he lay helplessly bound by the infliction of nine antemortem slicing and stabbing wounds. Danny remained conscious and aware at least three or four minutes into the final assault, plus he endured the knife in his back as he pled for his life. Even to an adult those minutes would have seemed like an eternity. They would be all the more so for a child. These actions of stripping, binding, and slicing a young boy nine times while he knowingly awaits his death involve a deep element of sadism. A more terrifying, torturous, and humiliating death we can not imagine. Thus, we find beyond a reasonable doubt that aggravator 29-2523(1)(d) would have been

-16-

applied even had the sentencing panel not considered the "exceptional depravity" prong.

The sentencing panel also found in aggravation that Joubert killed Danny, in part, to conceal his identity. The evidence establishes beyond a reasonable doubt, that once embarked on his enterprise, Joubert seriously considered letting Danny go in response to his promise not to tell, but decided to continue in order to avoid detection. A murderer, like any other human being, is a complex person with a fluid thought process, and may have multiple motivations for acting. That Joubert also killed to satisfy his curiosity and sexual fantasies in no way detracts from the fact that he finished the project because he believed Danny would otherwise get him in trouble. Thus we find this aggravator to have been proven beyond a reasonable doubt.

In mitigation, the panel credited Joubert for pleading guilty. It also found that Joubert had no prior significant criminal history at the time he killed Danny and that he was acting under an extreme mental disturbance. However, there was also evidence that while Joubert was acting out disturbed fantasies, he could control his behavior and choose not to act out his fantasies.

As noted, there is no mathematical formula available for reweighing. The process requires a careful examination and weighing of the relevant factors given the totality of circumstances. Williams, 40 F.3d at 1542. In view of the overwhelming evidence of the callousness of Danny Eberle's murder and of his extreme suffering, and considering that Joubert could control his morbid desires, we find beyond a reasonable doubt that the sentence would have been the same had the "exceptional depravity" prong of aggravator 29-2523(1)(d) not been considered by the sentencing panel.

In Christopher Walden's murder, the evidence shows Christopher was abducted, forced to strip, and forced to lie in the cold snow while Joubert strangled him. The strangling continued until Joubert's hands got too cold, at which time he switched to stabbing and slicing. Christopher suffered seven antemortem stabbing and slicing wounds, not counting the large cutting wound inflicted when Joubert slit his throat. Christopher remained alert and conscious during this ordeal, gradually lapsed into a coma, and died from loss of blood. Five of the antemortem wounds were in areas of thin skin, but did not penetrate deeply, indicating Christopher had been tortured. These facts support findings of torture, sadism, and extreme suffering of the victim, including extreme psychological terror. We find that these facts establish beyond a reasonable doubt that the "especially heinous, atrocious, [and] cruel" prong would have been applied to Joubert even had the sentencing panel not considered the "exceptional depravity" prong in Christopher's case.

The panel also found that Joubert killed Christopher, in part, to conceal his own identity. The evidence shows that after being abducted, Christopher began to weep. Joubert was touched, and wanted to let the boy go, but decided against it, as he thought Christopher would surely identify him. He therefore decided he must kill Christopher as planned. As discussed above, killing with multiple motives in no way lessens the factual existence of each motive. The evidence shows beyond a reasonable doubt that Joubert decided that he must go through with his plan to kill Christopher in order to conceal his identity as abductor. Thus, the evidence supports the application of this aggravating factor. As a third aggravating circumstance, the sentencing panel found that Joubert had a substantial history of serious assaultive criminal behavior at the time he killed Christopher. The panel relied on Joubert's previous murder of Danny to apply this factor. Even one prior premeditated first-degree murder constitutes a substantial history

of serious assaultive criminal behavior, and we find that this aggravator was established beyond a reasonable doubt.

In mitigation in Christopher's case, the panel gave Joubert credit for his guilty plea. It also considered Joubert's sexual fantasies to be an extreme mental disturbance. Again, there was evidence Joubert could control his actions in regard to these fantasies. Reweighing these factors, as described above, we find the overwhelming force of the evidence to be that the same penalty would have been imposed even in the absence of the "exceptional depravity" prong of aggravator 29-2523(1)(d). We therefore find any error as to the application of that prong, its subsequent narrowing, or any arguable reweighing done by the Nebraska Supreme Court to have been harmless beyond a reasonable doubt.

## B. Improper Application of Aggravating Factors

Joubert argued to the district court that the State of Nebraska improperly applied the statutory aggravating factor 29-2523(1)(b), killing to hide the perpetrator's identity, and aggravator 29-2523(1)(a), having a substantial history of serious assaultive criminal behavior, to him. He argues that the evidence does not support their application. When considering a section 2254 petition, we review the factual basis supporting the application of aggravating circumstances under the deferential Jackson v. Virginia sufficiency of the evidence test,[11] and reverse only where the evidence is so slim that finding the aggravator amounts to arbitrary and capricious action. See Lewis v. Jeffers, 497 U.S. 764, 783 (1990). Viewing the evidence most favorably to the state, we affirm if any reasonable factfinder could have found

---

[11]Under the Jackson v. Virginia standard, a court review "the evidence in the light most favorable to the prosecution [to determine whether] any rational trier of fact could have found the essential elements . . . beyond a reasonable doubt." 443 U.S. 307, 319 (1979).

the existence of the aggravators beyond a reasonable doubt.  We have already discussed the evidence supporting the application of each of the aggravators in depth and found, de novo, that it established each of these aggravators beyond a reasonable doubt. We must necessarily reach the same conclusion under the <u>Jackson v. Virginia</u> standard.  Nonetheless, we elaborate.

In Joubert's recitation of the details of both murders, he tells of a point in each where the victims' actions caused him to reconsider his plan to kill them.  In both cases, he continued expressly to avoid the boys getting him in trouble by identifying him.  Viewing this evidence most favorably to the state, we find it to be such that a reasonable factfinder could find the aggravating circumstance of killing to avoid identification by the victim to be established beyond a reasonable doubt.

In Christopher's case, the panel found that Joubert's murder of Danny amounted to a substantial history of serious assaultive criminal behavior.  We find Joubert's argument that only one previous, premeditated, first-degree murder does not amount to a substantial history of serious assaultive criminal behavior to be absurd, and find that this evidence easily satisfies the <u>Jackson</u> standard.  Therefore, Joubert's claims as to the improper application of these aggravating factors are without merit.

## C. Plea Bargain

Joubert argues that the trial court improperly injected itself into the plea bargaining process by agreeing to accept a plea conditional on the outcome of a suppression hearing and thus coerced his plea.  The context of the trial court's statement was the following.  Joubert's counsel wanted a suppression hearing before empaneling a jury, but the trial judge feared that due to the gruesome details of the case any such hearing would render empaneling an impartial jury virtually impossible.  Counsel

insisted that his client would be prejudiced if he had to question jurors as to their attitudes towards confession during voir dire, only to have the confession subsequently suppressed, and that the situation impaired his ability to bargain with the prosecutor. In response, the court told counsel it was tentatively leaning towards denying the pending suppression motion, but clarified that it would have no problem accepting a plea conditional on the outcome of that motion, and that such a plea would not prejudice the court's consideration of that motion. However, Joubert pled guilty unconditionally and no suppression hearing was ever held. Because neither Joubert nor his counsel raised the suppression hearing at the plea proceedings, we review this claim under the plain error standard. See United States v. McBride, 862 F.2d 1316, 1319 (8th Cir. 1988).

We fail to see how the trial court's mere indication of its willingness to accept a conditional plea amounts to the court injecting itself into the plea bargaining process. Further, we are perplexed by Joubert's argument that the trial court somehow wronged him by not holding a suppression hearing when his plea was unconditional. That Joubert was unable, for whatever reason, to secure from the prosecution an agreement to a conditional plea, and therefore did not present such a plea to the trial court, in no way renders that court's willingness to accept such a plea, if offered, coercive. We simply do not see any error in these events. Further, the record clearly shows that the trial court alerted Joubert to the fact that an unconditional plea would be the death knell to any suppression hearing, and ascertained that Joubert's confession, as well as his plea, was knowing, voluntary, and uncoerced before accepting either plea.[12] Thus, even if there were

_____

[12]At the plea hearing, Joubert testified that the police had promised him nothing and had informed him of his rights, in detail, before he confessed. Further, Joubert's counsel, in response to the court's searching questioning as to the voluntariness and admissibility of the confessions, stated that the confessions were

-21-

some error which escapes us, there was no prejudice.  This claim is without merit.

### D. Ineffective Assistance

This claim is related to the one directly above, in that Joubert argues that his attorney was ineffective for failing to inform him that the court would consider a conditional plea.  The evidence as to whether or not Joubert knew the court would accept a conditional plea is conflicting, but the ineffective assistance claim fails for lack of prejudice.  To establish ineffective assistance, a petitioner must show both deficient performance and prejudice.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Joubert cannot show prejudice.

As the Supreme Court stated in Lockhart v. Fretwell, a defendant is not entitled to have a court make an error of law, however favorable.  113 S. Ct. 838, 843 (1993).  Therefore, failure of a court to make a legal error in the defendant's favor cannot establish prejudice.  Id.  The record and Joubert's own testimony establish that his confessions were not coerced and should not have been suppressed.  Thus, even if Joubert's attorney failed to inform him of the trial court's willingness to accept a conditional guilty plea, and even if that failure amounted to deficient performance under Strickland, Joubert cannot show prejudice, and this claim must fail.

### E. Nebraska's Death Penalty Scheme is Facially Arbitrary and Arbitrary as Applied.

This claim amounts to an attack on the prosecutorial and sentencing discretion inherent in our system of law, in that actors are permitted to show mercy.  Mercy may arise from a favorable plea

clearly admissible.

bargain, from the failure to pursue a death sentence, or from the sentencer's refusal to impose the death sentence even when it would be permissible to do so.  However, the Supreme Court has already explicitly rejected the argument that the possibility of prosecutors or sentencers showing mercy renders a death penalty scheme arbitrary.  Proffitt v. Florida, 428 U.S. 242, 254 (1976); Gregg v. Georgia, 428 U.S. 153, 199-204 (1976).  The Court explained that nothing in the Constitution forbids a decision to grant individual defendants mercy, rather the inquiry into arbitrariness focuses on the system leading to an ultimate denial of mercy.  Gregg, 428 U.S. at 199.  In fact, the Court intimated that a regime with no room for mercy would be alien to our system of law and unconstitutional in itself.  Id. at 199-200 n.50. Therefore, this claim too is without merit.

**III. CONCLUSION**

For the reasons set out above, we reverse the district court's grant of the writ, and affirm its decisions on all other issues.

BRIGHT, Circuit Judge, dissenting.

I dissent.

The Nebraska law in one of the aggravating circumstances underlying a possible death sentence contains the clause that the "murder . . . manifested exceptional depravity by ordinary standards of morality and intelligence."[1]  Neb. Rev. Stat. § 29-2523(1)(d) (Reissue 1985).  The Eighth Circuit has determined that the "exceptional depravity" clause is unconstitutionally vague on

---

[1]The full statutory aggravating factor in question contains two clauses and reads, "The murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence."  Neb. Rev. Stat. § 29-2523(1)(d).

its face.  See Moore v. Clark, 904 F.2d 1226, 1228-33 (8th Cir. 1990).  The appeal by Warden Hopkins on behalf of Nebraska raises three relatively simple, uncomplicated issues.

1.  Whether a procedural bar exists to prevent Joubert from presenting his claim in federal court in a habeas application that the above-quoted aggravating circumstance was unconstitutionally vague?

The district court answered "no" to that question.  The majority says "yes."  I agree with the district court for reasons stated in its decision and as amplified below.

2.  Whether, on the merits, the application by the Nebraska sentencing court of the aggravator in question prejudiced Joubert?  The district court determined that prejudice existed because the sentencing panel relied heavily on this aggravating circumstance based on the Nebraska sentencing panel's statement as follows:

> We recognize that all murders may be characterized as atrocious and cruel, and further recognize there must, of necessity, be some interval of time between even the most savage of knife attacks and a resulting death.  <u>We, nevertheless, conclude this aggravating circumstance is applicable with respect to both clauses, recognizing the evidence and factors on the second clause of the aggravating circumstance far outweigh those under the first clause.</u>
>
> We conclude and find beyond a reasonable doubt this aggravating circumstance exists in both crimes for which the defendant is to be sentenced.

Appellant's Addendum, at p. 6 (emphasis in addendum).

I agree with the district court.  I read the majority opinion as not in direct disagreement.

> The district court found that such greater reliance on the unconstitutionally vague prong rendered the death

-24-

sentence infirm under <u>Stringer v. Black</u>, 503 U.S. 222, 232 (1992) (use of an invalid aggravator in a weighing state amounts to an impermissible thumb on death's scale).  While we might agree with the district court's <u>Stringer</u> concerns, we reverse on other grounds.

Slip op. at 5.

3.  Whether the error is harmless?  The majority finesses the prejudicial impact of the unconstitutional aggravator by asserting that the unconstitutional imposition of the aggravator is "harmless error."  Slip op. at 15-19.  The majority's harmless error analysis does not relate to the aggravator here in question, but instead concludes that the application of other aggravating circumstances requires the death penalty.

The majority's determination of harmless error cannot stand.  We have stated that:

> Rather, the issue under Chapman [<u>Chapman v. California</u>, 386 U.S. 18 (1967)] is whether the sentencer actually rested its decision to impose the death penalty on the valid evidence and the constitutional aggravating factors, independently of the vague factor considered; in other words, whether what was actually and properly considered in the decision-making process was "so overwhelming" that the decision would have been the same even absent the invalid factor.

<u>Williams v. Clarke</u>, 40 F.3d 1529, 1541 (8th Cir. 1994).

The <u>Chapman</u> standard for harmless error as reiterated in <u>Williams</u> cannot be met in light of the sentencing panel's heavy reliance on the "exceptional depravity" clause.

My further discussion follows.

## 1.  Exceptional Depravity Clause Invalidity.

Joubert's sentencing panel noted that the exceptional depravity aggravating circumstance "describes in the disjunctive two [separate situations] which may . . . operate in conjunction with . . . or independent of one another" distinguishing the first "heinous, atrocious or cruel" clause (which focuses on the victim's perspective) from the second "exceptional depravity" clause (focusing on the defendant's state of mind as manifested by his conduct, characterized here by the planning and repetitive nature of the murders).  Joubert's sentencing panel concluded "this aggravating circumstance is applicable with respect to both clauses, recognizing the evidence and factors on the second clause of the aggravating circumstance far outweigh those under the first clause."  In defining the second "exceptional depravity" clause, the sentencing panel relied on the Nebraska Supreme Court's definition in State v. Moore, 316 N.W.2d 33 (Neb. 1982).

On appeal, the Nebraska Supreme Court agreed with the sentencing panel in both the factual findings and conclusions of law as to the construction of section 29-2523(1)(d).  State v. Joubert, 399 N.W.2d 237, 250-51 (Neb. 1986).

The Eighth Circuit has since granted habeas relief in the Moore case, determining that this second "exceptional depravity" clause or prong was unconstitutionally vague, and that the facially-vague statute had not then been salvaged by the Nebraska Supreme Court's construction of it.  See Moore v. Clark, 904 F.2d 1226, 1228-33 (8th Cir. 1990).  As the district court concluded, and the majority seems to concede, see infra, slip op. at 5, the sentencing panel's greater reliance on the unconstitutionally vague "exceptional depravity" prong could make Joubert's death sentence infirm under Stringer v. Black, 503 U.S. 222, 232 (1992) (using invalid aggravator in weighing state amounts to impermissible thumb on death's scale).  See also Joubert, 399 N.W.2d at 252 (balancing

-26-

of aggravating circumstances against mitigating circumstances not merely matter of number counting, but rather requires careful weighing of various factors and reasoned judgment as to which factual circumstances require imposition of death and which can be satisfied by life imprisonment in light of totality of circumstances).

**2.   Joubert raised the exceptional depravity issue on direct appeal.**

In his direct appeal, Joubert challenged the sentencing panel's imposition of section 29-2523(1)(d).  The federal district court concluded that due process was inherent in the analysis of that issue.   I believe that the vagueness issue was raised in Joubert's direct appeal brief.   In his brief to the Nebraska Supreme Court, Joubert extensively quoted from the definitions of both prongs one and two of section 29-2523(1)(d) contained in State v. Moore, 316 N.W.2d 33 (Neb. 1982)--the same definitions employed by his sentencing panel.  (See Appellant's Appendix at 66-67.)  He argued that the "exceptional depravity" prong, as defined by the Nebraska Supreme Court in Moore, "pertaining to the state of mind of the perpetrator, would apply to any perpetrator of a first degree (premeditated) murder[,]" and in fact, "would apply equally to all persons convicted of premeditated murder."   (Appellant's Appendix at 67-68.)   He argued that, as in State v. Hunt, 371 N.W.2d 708 (Neb. 1985), nothing appeared in this case beyond the ordinary circumstances which attend any death-dealing violence, see Appellant's Appendix at 68, implying there was nothing to distinguish this from other capital cases in which the death sentence was not imposed.

Because Joubert in a substantial way asserted a vagueness claim before the state court on direct appeal, the majority errs in concluding that Joubert is procedurally barred from asserting these claims in his federal habeas petition.  See Smith v. Lockhart, 921

F.2d 154, 156 n.3 (8th Cir. 1990); <u>see</u> <u>also</u> <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982) (per curiam) (habeas petitioner must have fairly presented to state courts "substance" of his federal claim); <u>Rust v. Hopkins</u>, 984 F.2d 1486, 1491 (8th Cir.) (finding specific references in brief more than sufficient to deem issue fairly presented and court need not consider cause and prejudice), <u>cert. denied</u>, 113 S. Ct. 2950 (1993).

In his concurring opinion, Nebraska Supreme Court Chief Justice Krivosha responded to Joubert's vagueness claim, and asserted that Joubert misunderstood <u>State v. Hunt</u>. See <u>Joubert</u>, 399 N.W.2d at 253. Although Justice Krivosha focused his response upon the first "especially heinous" prong of section 29-2523(1)(d), <u>see</u> <u>id.</u> at 253-57, his opinion seems to acknowledge Joubert's challenge to the second "exceptional depravity" prong, but does not discuss the phrase "exceptional depravity" because Chief Justice Krivosha suggests that "exceptional depravity" is simply a further factor in determining "especially heinous." <u>Joubert</u>, 399 N.W.2d at 258. In my view, that discussion is sufficient to indicate that the Nebraska Supreme Court Justices in essence recognized and rejected <u>sub</u> <u>silentio</u> Joubert's "exceptional depravity" vagueness claim.

I also briefly address the comments in the majority opinion, slip op. at 4, that perhaps the Nebraska Supreme Court may have narrowed the statutory language of "exceptional depravity." The Nebraska Supreme Court did not contend it was narrowing the definition used by the sentencing panel; rather, it wholeheartedly adopted the panel's factual findings and conclusions of law regarding the construction of section 29-2523(1)(d), notwithstanding its references to <u>State v. Palmer</u>, 399 N.W.2d 706 (Neb. 1986), <u>cert. denied</u>, 484 U.S. 872 (1987). See <u>Joubert</u>, 399 N.W.2d at 251. The Appellant Warden Hopkins does not suggest that the Nebraska Supreme Court cured the constitutional defect by reweighing on direct appeal; instead, the appellant asserts that,

-28-

even if the district court was correct in granting the writ, it erred in its alternative to habeas relief, requiring a remand to the sentencing court rather than to the Supreme Court of Nebraska for appropriate remedial action of reweighing or harmless error analysis. (Appellant's Br. at pp. 42-44.)

### 3. Harmless Error

Finally, the majority determines that even if Nebraska's "reweighing" were improper, any error would be harmless beyond a reasonable doubt. I disagree. As we observed in <u>Moore v. Clark</u>, 904 F.2d at 1228, the Nebraska Supreme Court itself traditionally has not applied a harmless error analysis in cases where an aggravating circumstance is found to have been invalidly applied. <u>See</u> <u>State v. Bird Head</u>, 408 N.W.2d 309, 319-20 (Neb. 1987) (reversing and remanding where error in sentencing panel's determination that beyond a reasonable doubt aggravating circumstance existed); <u>State v. Jones</u>, 328 N.W.2d 166, 174 (Neb. 1982) (death sentence must be reversed and cause remanded where invalid aggravating circumstance applied). <u>But cf.</u> <u>State v. Reeves</u>, 476 N.W.2d 829, 837 (Neb. 1991) (relying on <u>Clemons</u> to conduct harmless error review, but concluding error not harmless beyond reasonable doubt). Where the state usually rejects such an analysis, I think it inappropriate for this court to assert harmless error where life or death hang in the balance. The district court analyzed harmless error in part as follows:

> Greatly significant is the fact that the sentencing panel found that the evidence and factors relating to the second prong that was later declared unconstitutionally vague "far outweigh[ed]" those relating to the first prong. (Ex. 18 (R.) at 46.)

. . . .

> [I]n a case remarkably similar to <u>Joubert</u>, the Eighth Circuit affirmed the district court's granting of a writ of habeas corpus based on the unconstitutional

-29-

vagueness of the second portion of aggravating circumstance (1)(d). <u>Moore</u>, 904 F.2d at 1234. In <u>Moore</u>, the sentencing panel relied on the second, but not on the first, portion of aggravating circumstance (1)(d). <u>Id.</u> at 1229. After an extensive discussion regarding the unconstitutionality of the second portion of (1)(d), <u>Id.</u> at 1229-33, the Eighth Circuit affirmed the district court's conclusion that Moore be "resentenced to life imprisonment unless the State initiated capital resentencing proceedings within a reasonable time after judgment became final." <u>Id.</u> at 1228. Regarding the Eighth Circuit's decision to affirm the district court, the Eighth Circuit stated:

> Since the Nebraska death penalty statute requires that aggravating and mitigating circumstances be weighed against each other, Neb. Rev. Stat. § 29-2522, and the Nebraska Supreme Court does not apply a harmless error analysis in cases where an aggravating circumstance is found to have been invalidly applied, Moore's sentence would have to be vacated for new sentencing proceedings.

<u>Id.</u> at 1228.

The Court finds that in the <u>Joubert</u> case, the death sentences have been "infected," <u>Id.</u>, by an unconstitutionally vague factor. In determining that aggravating circumstance (1)(d) applied, the sentencing panel specifically stated that "the evidence and factors on the second clause of the aggravating circumstances far outweigh those under the first clause." (Ex. 18 (R.) at 46.) This Court is bound to recognize the Nebraska Supreme Court's characterization of Nebraska law relating to the imposition of the death penalty. <u>Stringer</u>, 112 S. Ct. at 1137. The Nebraska Supreme Court has stated that aggravating circumstance (1)(d) is comprised of two separate, disjunctive circumstances which may operate either together or independently. <u>See, e.q.</u>, <u>Reeves</u>, 476 N.W.2d at 838. However, the Nebraska Supreme Court has instructed that the process of weighing aggravating and mitigating circumstance should not consist of a mere counting of aggravating factors, but rather the process should entail a very careful examination and weighing of the factors, given the totality of the circumstances. <u>Id</u>. at 836 (quoting <u>Victor</u>, 457 N.W.2d at 447); <u>Stewart</u>, 250 N.W.2d at 862-63.

Appellant's Addendum at pp. 6, 7, 8 and 9.

-30-

The district court found the error to have "tainted" the sentence.  Appellant's Addendum at p. 8.  That finding establishes prejudice.  Under the guise of harmless error, the majority its seems has reweighed the sentencing factors. Reweighing however, is a task for the Nebraska courts.

In sum, Joubert's death sentence cannot stand.  I would affirm the district court's grant of habeas relief changing Joubert's sentence to life imprisonment without possibility of parole unless the Nebraska State courts provide appropriate post-sentencing or resentencing procedures.

A true copy.

Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.