STATE OF NEBRASKA, APPELLEE, V. RANDOLPH K. REEVES,
APPELLANT.

476 N.W.2d 829

Filed November 8, 1991.    No. 88-972.

John Stevens Berry and Robert B. Creager, of Berry, Anderson, Creager & Wittstruck, P.C., for appellant.

Don Stenberg, Attorney General, and Sharon M. Lindgren for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

PER CURIAM.

This case is before us on remand from the U.S. Supreme Court. Randolph K. Reeves' petition for writ of certiorari was granted, and on November 13, 1990, the U.S. Supreme Court vacated our decision in *State v. Reeves*, 234 Neb. 711, 453 N.W.2d 359 (1990), and remanded the cause to this court for further consideration in light of its decision in *Clemons v. Mississippi*, 494 U.S. 738, 110 S. Ct. 1441, 108 L. Ed. 2d 725 (1990).

In 1981, Reeves was convicted of two counts of first degree murder in the 1980 deaths of Janet Mesner and Victoria Lamm. The facts and circumstances of the crimes are laid out in our opinion in *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984). He was sentenced by a three-judge panel to death for each murder. The panel found three aggravating circumstances

in regard to the death of Lamm: Neb. Rev. Stat. § 29-2523(1)(b) (Reissue 1989) (the murder was committed in an apparent effort to conceal commission of a crime or to conceal the identity of the perpetrator of a crime), § 29-2523(1)(d) (the murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence), and § 29-2523(1)(e) (at the time the murder was committed, the offender also committed another murder). With regard to the death of Mesner, the panel found to exist aggravating circumstances (1)(d) and (1)(e). The panel found no statutory mitigating circumstances to exist as to either murder, but considered nonstatutory mitigating circumstances presented by Reeves.

On direct appeal, this court affirmed Reeves' convictions and sentences. See *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984). However, we invalidated as a matter of law aggravating circumstance (1)(d) as it applied to the murder of Lamm. We also found as a matter of law that mitigating circumstance § 29-2523(2)(g) (at the time of the crime the capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental illness, mental defect, or intoxication) existed as to both murders.

Reeves filed for postconviction relief, pursuant to Neb. Rev. Stat. §§ 29-3001 et seq. (Reissue 1989), and new counsel was appointed. The district court, after granting an evidentiary hearing, dismissed Reeves' motion. On appeal from the district court's decision, we again affirmed Reeves' convictions and sentences. See *State v. Reeves*, 234 Neb. 711, 453 N.W.2d 359 (1990). As stated above, Reeves appealed this decision to the U.S. Supreme Court, which granted his petition for writ of certiorari, vacated our decision, and remanded the cause to us for reconsideration in light of *Clemons*.

## THE HOLDING IN *CLEMONS V. MISSISSIPPI*

In *Clemons*, the Court considered the validity of a death sentence affirmed by the Mississippi Supreme Court despite the fact that one of the aggravating factors used by the jury in sentencing was constitutionally invalid in light of the Court's

decision in *Maynard v. Cartwright*, 486 U.S. 356, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988).

At Clemons' sentencing hearing, the State presented evidence establishing two aggravating factors: (1) that the murder was committed during the course of a robbery for pecuniary gain and (2) that it was an "especially heinous, atrocious or cruel" killing. Clemons presented mitigating evidence from his mother and a psychologist. The jury found that the aggravating circumstances outweighed the mitigating circumstances and opted for the death penalty.

The Mississippi Supreme Court found the *Maynard* case inapplicable and stated that with or without the "especially heinous" aggravating factor, the sentence would have been the same. The court then conducted its proportionality review and affirmed the death sentence.

Clemons claimed violations of his due process and eighth amendment rights. The U.S. Supreme Court rejected Clemons' claim that an appellate court may not uphold a death sentence imposed by a jury that has relied in part on an invalid aggravating factor. The Court stated that the Constitution does not require that a jury impose a death sentence or that the jury specify the aggravating factors permitting imposition of the death sentence.

The Court also rejected Clemons' contention that an appellate court cannot properly reweigh aggravating and mitigating circumstances and, thus, it is a violation of the eighth amendment for an appellate court to attempt to salvage the death penalty in this manner. The Court stated that appellate courts routinely consider whether the evidence supports the jury verdict and can and do make individualized sentencing determinations based on the evidence in each defendant's case. A court undertakes a similar process during a proportionality review. The Court found nothing unfair or unreliable about appellate reweighing of aggravating or mitigating factors, and stated that such weighing could adequately be accomplished without the assistance of written jury findings.

The Court then considered Clemons' claim that the Mississippi court did not actually reweigh the evidence at all. The Court stated that an automatic affirmance, so long as there

remained one aggravating circumstance, was not appellate reweighing and would be invalid because the defendant would not receive individualized treatment. The Court said it was unable to determine from the record whether the Mississippi court did perform an adequate weighing function or merely affirmed the sentence based on the remaining aggravating factors. The Court vacated the judgment and remanded for further proceedings to determine the factors the court did consider in its analysis.

The Court also stated that the Mississippi Supreme Court had the option of conducting a harmless error review as to the sentencing proceeding under the proper "beyond a reasonable doubt" standard of *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

The Court made clear that appellate reweighing and harmless error analysis by state courts was not required by *Clemons*, but was within the discretion of the states. *Clemons* teaches only that such procedures are constitutionally permissible and that in some situations state appellate courts might find such analysis difficult and better left to the sentencing court.

In summary, *Clemons v. Mississippi*, 494 U.S. 738, 110 S. Ct. 1441, 108 L. Ed. 2d 725 (1990), sets forth three options available to appellate courts in death penalty cases where there has been an error concerning the trial court's finding of aggravating and/or mitigating circumstances. First, the court may analyze and reweigh the aggravating and mitigating circumstances itself to determine whether or not the scale tips in favor of the death penalty. Second, the court may conduct a harmless error analysis to determine whether or not error by the district court in finding aggravating or mitigating circumstances has prejudiced the rights of the defendant. Third, the court may remand the cause for a new sentencing hearing.

## THE HOLDING IN *PARKER V. DUGGER*

Since *Clemons*, the Supreme Court has commented further on the role of state appellate courts in independently reweighing aggravating and mitigating factors in death penalty cases. In

*Parker v. Dugger*, _____ U.S. _____, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991), the Court held that the Florida Supreme Court erred in affirming Parker's death sentence because it failed to consider evidence of nonstatutory mitigating circumstances. In Parker's case, the Court found that the Florida trial judge relied on nonstatutory mitigating factors in his sentencing determination, but did not specifically enumerate them in his written findings. The Florida Supreme Court affirmed the sentence based on the findings of the trial judge and found no mitigating circumstances to exist. The Florida court did not rely on what the trial judge actually found (evidence of nonstatutory mitigating factors that were not explicit in the sentencing record) and thus affirmed Parker's death sentence without considering all mitigating circumstances. This affirmance was invalid because it deprived Parker of an individualized sentencing determination.

The Court stated that under *Clemons* it is permissible for a state appellate court to reweigh aggravating and mitigating factors, but such reweighing must be done independently. The court must achieve, in its review of the case, an individualized determination of the sentence based on the defendant's character and the circumstances of the crime. The Florida Supreme Court's decision was not arrived at independently, since the court made no review of the individual record in Parker's case and did not rely on the actual findings of the trial judge. Although the Court ordered the Florida Supreme Court, on remand, to reconsider Parker's sentence in light of the entire trial record and sentencing hearing, the Court stated elsewhere in the opinion that a meaningful appellate review does not require the state court to consider the defendant's actual record in all circumstances. In this case, however, an individualized determination could have been achieved only if the Florida court had conducted its own examination of the trial and sentencing records.

## THE DEATH PENALTY IN NEBRASKA AFTER *CLEMONS*

This court has decided four death penalty cases since *Clemons*: *State v. Joubert*, 235 Neb. 230, 455 N.W.2d 117

(1990) (postconviction); *Anderson v. Gunter*, 235 Neb. 560, 456 N.W.2d 286 (1990) (habeas corpus); *State v. Victor*, 235 Neb. 770, 457 N.W.2d 431 (1990) (direct appeal); and *State v. Otey*, 236 Neb. 915, 464 N.W.2d 352 (1991) (second postconviction). *Joubert* does not discuss error in the finding of aggravating and mitigating circumstances, and *Anderson* concerns only the "Right to Bear Arms" amendment to the Nebraska Constitution.

In *Victor*, the defendant assigned as error the sentencing court's findings of aggravating circumstances (1)(a) and (1)(d) and the failure to find mitigating circumstance (2)(g), as well as the constitutionality of (1)(d) (the "heinous, atrocious, cruel" circumstance). We affirmed the judgment of the district court as to all its findings. We also determined that the first prong of (1)(d) was constitutional as limited to murders involving torture, sadism, or sexual abuse. We did not specifically refer to *Clemons v. Mississippi*, 494 U.S. 738, 110 S. Ct. 1441, 108 L. Ed. 2d 725 (1990), anywhere in the opinion, but did conduct an independent reweighing of the aggravating and mitigating factors on appeal. We stated:

> Having weighed anew the aggravating circumstances and the mitigating circumstances . . . we conclude that, even excluding defendant's manslaughter conviction and giving full weight to Victor's conduct during previous incarcerations, the aggravating circumstances . . . so far outweigh the mitigating circumstance that the imposition of the death penalty was appropriate and not arbitrary.

*Victor, supra* at 795, 457 N.W.2d at 447. As is our procedure in reviewing a direct appeal of any death penalty case, our review included an examination of the entire trial record, as well as the findings of the sentencing panel. Our independent reweighing of the aggravating and mitigating circumstances was based upon our own review of the record, as well as the conclusions of the three-judge panel.

In *Otey*, the defendant assigned as error the sentencing panel's finding of aggravating circumstance (1)(d), the panel's failure to find any mitigating circumstances, and the decision of the panel to impose the death penalty. In that opinion, we specifically referred to *Clemons*, and summarily adopted the

reweighing rule, "[c]ompletely disregarding the New Jersey charges and weighing anew the aggravating and mitigating circumstances in this case, as permitted by *Clemons v. Mississippi* . . . ." *Otey, supra* at 927, 464 N.W.2d at 361. We relied on the findings of the sentencing panel in reweighing the aggravating and mitigating circumstances when affirming Otey's death sentence on this second postconviction claim. We had originally verified these findings through an independent review of the entire record in Otey's direct appeal.

Nebraska is a "weighing" state and is therefore governed by *Clemons*. A singe judge or a three-judge panel determines the aggravating and mitigating circumstances and decides whether to impose the death penalty by determining whether the aggravating circumstances outweigh the mitigating circumstances. See Neb. Rev. Stat. §§ 29-2520 and 29-2522 (Reissue 1989). In conducting the balancing of aggravating and mitigating factors, we are guided by our analysis in *Victor, supra* at 794-95, 457 N.W.2d at 447:

> The balancing of aggravating circumstances against mitigating circumstances is not merely a matter of number counting but, rather, requires a careful weighing and examination of the various factors. *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989); *State v. Joubert*, 224 Neb. 411, 399 N.W.2d 237 (1986). As we observed in *State v. Stewart*, 197 Neb. 497, 518, 250 N.W.2d 849, 862 (1977), quoting *State v. Dixon*, 283 So. 2d 1 (Fla. 1973): " 'It must be emphasized that the procedure to be followed by the trial judges and juries is not a mere counting process of X number of aggravating circumstances and Y number of mitigating circumstances, but rather a reasoned judgment as to what factual situations require the imposition of death and which can be satisfied by life imprisonment in light of the totality of the circumstances present. . . .' "

The findings on which an aggravating circumstance is based must be proved beyond a reasonable doubt. *State v. Simants*, 197 Neb. 549, 250 N.W.2d 881 (1977); *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986).

In a weighing state, when an appellate court invalidates one

or more of the aggravating circumstances, or finds as a matter of law that any mitigating circumstance exists not considered by the sentencing panel in its balancing, the appellate court may, consistent with the U.S. Constitution, reweigh the remaining circumstances or conduct a harmless error analysis. *Clemons v. Mississippi*, 494 U.S. 738, 110 S. Ct. 1441, 108 L. Ed. 2d 725 (1990). Under *Parker v. Dugger*, _____ U.S. _____, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991), the appellate court may consider the entire record at trial and sentencing anew, or may rely on the findings of the sentencing panel, provided the court makes independent findings and reviews all the aggravating and mitigating circumstances.

We apply the rule in *Clemons* and independently consider the circumstances of Reeves' case, rather than remand for a new sentencing hearing. We henceforth require our review under *Clemons* to include an independent examination of the trial record, the presentence investigation, and the findings of the sentencing panel in order to determine the existence or nonexistence of aggravating and mitigating circumstances, as well as a reweighing of all the factors. See *Parker, supra.* We find this to be the most effective way in which to ensure individualized and fair determination of the propriety of the death sentence in each defendant's case. We do not find this holding at odds with our previous decision in *State v. Otey*, 236 Neb. 915, 464 N.W.2d 352 (1991), where we reviewed only the findings of the sentencing panel. It is clear from the holding in *Parker* that reliance on the sentencing panel's findings is permissible, so long as the defendant is given individual treatment. Reliance on the panel's findings was particularly trustworthy in Otey's case, since we had conducted a complete review of the entire trial record during his direct appeal. We do not question those findings now and find our reliance upon them in keeping with the role of an appellate court in assessing the individual circumstances of each defendant's case.

## HARMLESS ERROR ANALYSIS

We must first determine if the sentencing panel's actions constituted harmless error. *Clemons* permits a harmless error analysis in appellate review of death penalty sentences.

" 'Harmless error exists in a jury trial of a criminal case when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in a verdict adverse to a substantial right of the defendant.' " *State v. Plant*, 236 Neb. 317, 343, 461 N.W.2d 253, 272 (1990) (Shanahan, J., concurring in the result). Accord *State v. Watkins*, 227 Neb. 677, 419 N.W.2d 660 (1988). See, also, *United States v. McCrady*, 774 F.2d 868 (8th Cir. 1985). In *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), the U.S. Supreme Court held that an otherwise valid conviction should not be set aside if the reviewing court concludes that the constitutional error was harmless beyond a reasonable doubt. We have repeatedly followed the "beyond a reasonable doubt" test set forth in *Chapman*. See, *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989); *State v. Sims*, 213 Neb. 708, 331 N.W.2d 255 (1983).

In this case, we are concerned with the error of the three-judge panel in failing to consider Reeves' intoxication as a mitigating factor. As stated above, in Reeves' direct appeal we found that mitigating circumstance (2)(g) existed as a matter of law.

We do not consider the error of the district court harmless beyond a reasonable doubt. We are unable to determine that the weighing analysis in the minds of the three-judge panel would have been the same if mitigating circumstance (2)(g) had been factored into the balance. We do not know what weight the judges may have given this circumstance if they had found it to exist. Therefore, we find it necessary to independently reweigh all the aggravating and mitigating circumstances to determine if the death penalty was an appropriate sentence in this case.

## REWEIGHING THE AGGRAVATING AND MITIGATING CIRCUMSTANCES

To review, the three-judge panel found aggravating circumstances (1)(d) and (1)(e) to exist with regard to the death of Mesner. In regard to the death of Lamm, the panel found aggravating circumstances (1)(b), (1)(d), and (1)(e) to exist. The panel found no mitigating circumstances to exist as to either murder. However, in Reeves' direct appeal this court

invalidated aggravating circumstance (1)(d) as to the murder of Lamm and found as a matter of law that mitigating circumstance (2)(g) existed as to both murders.

The three-judge panel based its finding of aggravating circumstance (1)(d) as to Mesner's murder on the conclusion that Mesner had been brutally stabbed and sexually abused by Reeves. The panel found that Reeves went to Mesner's home with the intent of having sexual relations with her, broke into the house, proceeded to forcibly attack her, stabbed her repeatedly, and had, or attempted to have, sexual relations with her. Mesner's death did not occur until several hours after the assault, during which time she suffered both physical and mental anguish.

As to the death of Lamm, the panel found that circumstance (1)(b) existed after determining that Lamm walked into Mesner's bedroom while Reeves was sexually assaulting Mesner and was killed to conceal Reeves' identity. The panel also concluded that (1)(d) applied to Lamm's murder, mentioning only that there were no "defense cuts" on Lamm's body or any evidence that she was able to resist the attack. The panel concluded from this evidence that Lamm's murder was callous, coldblooded, and malicious.

The panel also found that (1)(e) existed as to both murders based on evidence that the murders of Mesner and Lamm occurred at about the same time.

In our opinion in Reeves' direct appeal, we concluded that the sentencing panel was incorrect in finding that aggravating circumstance (1)(d) existed as to Lamm's murder. We found, based on evidence that no defense cuts were found on Lamm's body, that she was killed swiftly when she walked in on Reeves' assault on Mesner. We also determined that mitigating circumstance (2)(g) existed based on considerable evidence that on the day of the murder Reeves had consumed a large amount of alcohol, as well as two or three buttons of peyote, a hallucinatory drug. The State also conceded on two occasions that (2)(g) existed.

### THE MURDER OF JANET MESNER
We begin by analyzing the record as it pertains to the finding

of aggravating and mitigating circumstances in the murder of Mesner. A review of the aggravating and mitigating circumstances set forth in § 29-2523 is necessary.

(1) Aggravating Circumstances:

(a) The offender was previously convicted of another murder or a crime involving the use or threat of violence to the person, or has a substantial history of serious assaultive or terrorizing criminal activity;

(b) The murder was committed in an apparent effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime;

(c) The murder was committed for hire, or for pecuniary gain, or the defendant hired another to commit the murder for the defendant;

(d) The murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence;

(e) At the time the murder was committed, the offender also committed another murder;

(f) The offender knowingly created a great risk of death to at least several persons;

(g) The victim was a law enforcement officer or a public servant having custody of the offender or another; or

(h) The crime was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of the laws.

(2) Mitigating Circumstances:

(a) The offender has no significant history of prior criminal activity;

(b) The offender acted under unusual pressures or influences or under the domination of another person;

(c) The crime was committed while the offender was under the influence of extreme mental or emotional disturbance;

(d) The age of the defendant at the time of the crime;

(e) The offender was an accomplice in the crime committed by another person and his participation was relatively minor;

(f) The victim was a participant in the defendant's

conduct or consented to the act; or

(g) At the time of the crime, the capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental illness, mental defect, or intoxication.

Aggravating circumstance (1)(a) is not applicable to the murder of Mesner. Reeves had not previously been convicted of murder or any violent crime. Circumstance (1)(b) is also not applicable. Reeves made no attempt to conceal the murder of Mesner or to conceal his identity. On the contrary, he appeared to do everything possible to implicate himself in the murder by leaving his billfold, underwear, a sock, and the murder weapon at the scene, as well as walking away from Mesner's house on public roadways with his clothes covered with blood and his trousers unzipped. This circumstance is not applicable.

Aggravating circumstance (1)(c) is also not applicable. There is no evidence anywhere in the record that Reeves murdered Mesner for hire.

We do find circumstance (1)(d) applicable to this case. As we have stated before, (1)(d) describes two separate disjunctive circumstances which may operate together or independently of one another. *State v. Otey*, 236 Neb. 915, 464 N.W.2d 352 (1991); *State v. Moore*, 210 Neb. 457, 316 N.W.2d 33 (1982). The first circumstance is that the murder was especially heinous, atrocious, or cruel. We have said this circumstance includes a " 'pitiless crime which is unnecessarily torturous to the victim' and . . . cases where torture, sadism, or the imposition of extreme suffering exists." *Moore, supra* at 470, 316 N.W.2d at 41. We have narrowed this class to include murders involving torture, sadism, or sexual abuse. *State v. Rust*, 197 Neb. 528, 250 N.W.2d 867 (1977). In *State v. Victor*, 235 Neb. 770, 457 N.W.2d 431 (1990), we determined that this narrow construction of the first prong of (1)(d) comports with United States constitutional requirements and does not lead to arbitrary results. See *Harper v. Grammer*, 895 F.2d 473 (8th Cir. 1990). The State need only prove the first prong of (1)(d) for that aggravating circumstance to exist. *Otey, supra*. See *Victor, supra*.

We find from the evidence that Reeves' murder of Mesner involved at least the attempt to sexually assault her. Prior to her death, Mesner told police that Reeves raped her. Although laboratory tests were unable to determine the presence of spermatozoa in Mesner's vagina, semen of Reeves' blood type was detected on the underwear he left at the scene. One of Reeves' only recollections concerning the murders is that of raping and stabbing Mesner.

Besides the sexual assault or attempted sexual assault of Mesner, Reeves brutally stabbed her seven times in the chest area. It is unclear from the record whether the stabbing took place prior to or after the sexual assault, but the condition of the south bedroom of the house evidenced a violent struggle. Furniture was overturned, blood covered the floor, and the telephone had been ripped from the wall. It was obvious that Mesner struggled with Reeves during his attack upon her. After Reeves had stabbed both Mesner and Lamm and left the premises, Mesner managed to get downstairs and call 911 from the telephone on the first floor. When police officers and firemen arrived at the home, they found Mesner lying on the floor on the landing at the top of the stairs at the rear of the house, still alive and able to identify her attacker. She died approximately 4 hours after the attack while on the operating table at Lincoln General Hospital.

We find the first prong of (1)(d) to exist beyond a reasonable doubt. Mesner endured tremendous physical pain and suffering following Reeves' brutal attack upon her. A firefighter present at her home and a police officer in the emergency room where she was treated prior to her death testified that Mesner stated several times that she was in pain. She survived, despite her condition, for several hours following the attack, during which time she was forced to go downstairs to the only remaining telephone to summon help. Reeves' brutal assault upon Mesner was indeed pitiless and totally without provocation. He left her to die in her own home. We find that prong (1)(d) has been satisfied.

Reeves' rape or attempted rape and stabbing murder of Mesner was particularly unsettling because of his prior relationship with Mesner. She was a distant relative of Reeves.

He had known her all his life. He had been a guest in her home and had socialized with her on many occasions. He admitted that he was on friendly terms with her and that they had never had any type of romantic relationship. We conclude that aggravating circumstance (1)(d) exists beyond a reasonable doubt.

Aggravating circumstance (1)(e) also exists beyond a reasonable doubt. It is obvious from the evidence that Mesner and Lamm were killed at about the same time on March 29, 1980.

We do not find circumstance (1)(f) to exist. There is no evidence in the record to show that Reeves' actions on the night of March 29 created a risk of harm to any other persons aside from the victims. Lamm's daughter was present in the house at the time of the killings, but there is no evidence that she was aware of Reeves' attacks on her mother or Mesner or that he tried to harm her in any way. Reeves did not know the young girl was in the house.

Furthermore, (1)(g) also does not exist. Mesner was not a public servant or a law enforcement officer. Neither was the crime committed to disrupt or hinder the exercise of any governmental function, eliminating circumstance (1)(h).

We now turn to the mitigating factors outlined in § 29-2523. We do not find (2)(a) to exist in this case. After a review of the presentence investigation report, which includes Reeves' "rap sheet," we find that Reeves has a history of criminal offenses, including arrests and convictions for marijuana possession, insufficient-fund checks, and disturbing the peace. These offenses, while rather petty and nonviolent in nature, nonetheless constitute a history of criminal activity. The language of the statute does not require past criminal acts to be violent or even that convictions result to prevent a finding of circumstance (2)(a). Any history of violent criminal behavior would likely be counted in aggravating circumstance (2)(a) if a conviction resulted. Reeves' criminal history prevents a finding of mitigating circumstance (2)(a).

We also do not find circumstance (2)(b) to exist. There is no evidence that Reeves acted under the influence of any other party at the time he committed the murders. Likewise,

circumstance (2)(c) does not exist. An expert witness at trial testified that Reeves suffered from a serious emotional problem. The vast majority of other psychiatric and psychological testimony supports our conclusion that apart from his impairment due to drug and alcohol consumption, Reeves was sane and mentally competent on the night of the murders.

We do not find Reeves' age to be a mitigating factor. At the time of the murders he was 24 years old, well past the age of majority. He was financially independent of his parents and living on his own. Circumstance (2)(d) does not exist. Circumstances (2)(e) and (2)(f) also do not exist. Reeves' participation in the murders of Mesner and Lamm was singular. He was not an accomplice, but committed the acts on his own. Likewise, Mesner did not participate in Reeves' acts and certainly did not consent to being raped or murdered.

We do, however, find circumstance (2)(g) to exist. The record is replete with evidence of Reeves' alcohol and drug consumption prior to the murders. Reeves stated that he had been drinking since approximately 8 a.m. the morning prior to the murders and had consumed peyote mixed with orange juice at a party that evening. Two blood alcohol tests administered to Reeves after his arrest showed his blood alcohol level to be .149 at approximately 6 a.m. the next morning and .095 approximately 2 hours later. One expert witness testified that based on his calculation of Reeves' metabolism of alcohol, Reeves' blood alcohol level could have been .20 or greater at the time of the murders. Evidence of mescaline, found in the drug peyote, was also found in Reeves' urine. While the testimony was in conflict over whether Reeves' mixture of alcohol and peyote affected his ability to form the requisite intent for a sexual assault, at the very least his judgment or reasoning was impaired at the time of the murders. This is evident from the fact that he left his billfold, underwear, and a sock at the crime scene, and made no effort to hide or conceal himself after the murders. Rather, he was found walking down a public street with his pants unzipped and blood covering his clothing. The State conceded this circumstance during the sentencing hearing, and we find it to exist.

## The Murder of Victoria Lamm

We now consider the various aggravating and mitigating circumstances in regard to the murder of Lamm. We have already discussed aggravating circumstance (1)(a) above, and find that it does not exist as to Lamm's murder either.

However, we do find circumstance (1)(b) to exist as to the murder of Lamm. Apparently Lamm, who was sleeping in another room in the house, heard Reeves attack Mesner and went to Mesner's room to investigate. She evidently surprised Reeves during his assault upon Mesner, causing him to stab her to death. Reeves admitted that he did not know Lamm and did not know she was in the house when he went there. He cannot remember killing her. We can offer no explanation for the murder of Lamm other than that Reeves wanted to prevent Lamm from identifying him. If he was intent on continuing with his assault of Mesner despite Lamm's presence, he could have tied Lamm up or knocked her unconscious. Reeves was 6 feet tall and weighed approximately 200 pounds. Lamm was 5 feet 8 inches tall and weighed approximately 125 pounds. Clearly he could have overpowered her. Lamm posed no threat to Reeves except as a witness to his assault upon Mesner. We find circumstance (1)(b) to exist beyond a reasonable doubt.

As in Mesner's murder, we find no evidence that Reeves murdered Lamm for hire. Circumstance (1)(c) does not exist.

We agree with our original determination in Reeves' direct appeal and do not find circumstance (1)(d) to exist as to the murder of Lamm. Lamm's body did not evidence any defense cuts or show any other signs of resistance or struggle. Her death was caused by a stab wound that penetrated the major blood vessel leading to her heart. Dr. Harlan L. Papenfuss, who performed the autopsy on Lamm's body, testified that Lamm would have been rendered unconscious within a few seconds after sustaining this fatal wound and her death would have occurred within 10 minutes. Lamm did not endure prolonged suffering, nor was she tortured. Therefore, we do not find that her murder falls within circumstance (1)(d).

As we have discussed above, Lamm was killed at about the same time as Mesner. Circumstance (1)(e) exists beyond a reasonable doubt. Also, as in Mesner's case, circumstances

(1)(f), (1)(g), and (1)(h) are not applicable to Lamm's murder.

We need not discuss each mitigating circumstance individually as it relates to Lamm's murder, as Reeves' criminal history, age, participation in the murders, and mental condition were the same as to both murders. We reiterate again that we find mitigating circumstance (2)(g) to exist as to the murder of Lamm based on our above discussion of Reeves' alcohol and drug consumption leading up to the night of the murders.

### NONSTATUTORY MITIGATING CIRCUMSTANCES

We now turn to the nonstatutory mitigating factors present in this case. In the sentencing hearing and at trial, Reeves raised several issues in mitigation of his possible death sentence. During the defense's case, several witnesses testified to Reeves' nonviolent nature and described him as a passive person. In the presentence investigation report, various statements from Reeves' family members and acquaintances indicated that the commission of any violent act would be totally out of character for Reeves. During the sentencing hearing, evidence of Reeves' remorse for the killings was also submitted. Reeves' amnesia concerning most of the events of March 29, 1980, was also confirmed by several of the psychiatrists and psychologists who testified. The sentencing panel did not specifically address any of these factors except to note that the court had received many letters from interested parties urging the panel not to impose the death penalty upon Reeves.

## CONCLUSION

We have balanced the aggravating and mitigating factors anew and have determined that the aggravating circumstances outweigh any statutory or nonstatutory mitigating circumstances in this case. Reeves' murders of Mesner and Lamm were senseless and brutal, made more so by the fact that he was a relative and friend of Mesner's. The fact that he stabbed to death two women and sexually assaulted or attempted to sexually assault one of them for no apparent reason is not mitigated by his intoxication on the night of the murders. Reeves was found to be sane at the time of the murders. His impairment by drug and alcohol use did not diminish his capacity to intentionally locate and break into

Mesner's house, sexually assault or attempt to sexually assault her, stab her, and then stab her houseguest to death. We do not consider Reeves' remorse, amnesia, usual nonviolent nature, or intoxication sufficient to excuse him from the death penalty. Sentences of death remain the appropriate penalties for Reeves.

AFFIRMED.