_____

Nos. 95-1098/95-1188
_____

Randolph K. Reeves,                    *
                                       *
        Appellee/Appellant             *
                                       * Appeal from the United States
    v.                                 * District Court for the
                                       * District of Nebraska.
Frank X. Hopkins, Warden of the        *
Nebraska Penal and Correctional        *
Complex,                               *
                                       *
        Appellant/Appellee.            *
                        _____

                Submitted:  September 9, 1996

                    Filed:  December 24, 1996
                        _____

Before BOWMAN, BRIGHT, and BEAM, Circuit Judges
                        _____

BEAM, Circuit Judge.


        Randolph Reeves was convicted of two counts of felony murder
and sentenced to death.  Following unsuccessful appeal and
postconviction actions in Nebraska state court, Reeves was
granted habeas corpus relief in federal district court.  We
reversed, but retained jurisdiction and remanded to the district
court for findings on Reeves's remaining claims.  The district
court again granted the petition and vacated Reeves's death
sentence.  For the second time, the State appeals the district
court's grant of the writ.

        We conclude that the district court erred in its grounds for
granting the writ.  We also conclude, however, that the district
court erred in deciding that Reeves was not entitled to a jury
instruction on lesser included offenses, a violation of Beck v.

Alabama, 447 U.S. 625 (1980).  On this basis, we conditionally grant Reeves's petition for habeas corpus.

## I.    BACKGROUND

The facts of this case are set out fully in the Nebraska Supreme Court's opinion in Reeves's state appeal. State v. Reeves, 344 N.W.2d 433, 438-40 (Neb. 1984) ("Reeves I").  A summary, however, is in order.

On March 29, 1980, Reeves killed Janet Mesner and Victoria Lamm in a Quaker meetinghouse in Lincoln, Nebraska.  Ms. Mesner and Reeves were friends, and were in fact related.  Reeves, who had been drinking heavily and had ingested some peyote buttons, entered a window of the house and either sexually assaulted or attempted to sexually assault Ms. Mesner in her bedroom.  In the course of the assault, Reeves stabbed Ms. Mesner seven times with a knife he had taken from the kitchen.  When Ms. Lamm entered the room during the assault, Reeves stabbed her to death.  Ms. Mesner was mortally wounded, but was able to find a telephone and dial 911.  Ms. Mesner identified Reeves as her attacker before dying less than three hours later at a local hospital.

Reeves was charged with two counts of murder in the course of or while attempting a sexual assault in the first degree.  See Neb. Rev. Stat. § 28-303.  Reeves presented defenses of insanity and diminished capacity, but was convicted on both counts.  Under Nebraska law, a first degree felony murder conviction carries possible sentences of life imprisonment or death.  Neb. Rev. Stat. § 28-105(1).  A three-judge sentencing panel sentenced Reeves to death.  On appeal, the Nebraska Supreme Court held that the sentencing panel had failed to consider a mitigating factor and had improperly applied an aggravating factor in determining Reeves's sentence.  Reeves I, 344 N.W.2d at 447-48.  The court, however,

reexamined the applicable factors and affirmed the death sentence. Id. at 448.

Reeves then pursued state postconviction remedies. The Nebraska Supreme Court again affirmed his sentence. State v. Reeves, 453 N.W.2d 359, 388 (Neb. 1990) ("Reeves II"). The United States Supreme Court, however, vacated Reeves II and remanded the case for reconsideration in light of its holdings in Clemons v. Mississippi, 494 U.S. 738 (1990). Reeves v. Nebraska, 498 U.S. 964 (1990). On remand, the Nebraska Supreme Court once again affirmed Reeves's sentence. State v. Reeves, 476 N.W.2d 829, 841 (Neb. 1991) ("Reeves III").

Reeves then brought this federal habeas corpus action under 28 U.S.C. § 2254, raising forty-four claims. The district court granted relief on the ground that the Nebraska Supreme Court did not have authority under state law to independently reweigh aggravating and mitigating factors in affirming a death sentence. Reeves v. Hopkins, 871 F. Supp. 1182, 1202 (D. Neb. 1994). The district court considered and rejected Reeves's claims related to jury instructions, including a claim that the trial court improperly denied his request to have the jury instructed on lesser included offenses of felony murder, in violation of Beck v. Alabama, 447 U.S. 625 (1980). Reeves v. Hopkins, 871 F. Supp. at 1205.[1] The court left unresolved seven of Reeves's claims.[2]

On appeal we reversed, holding that the district court exceeded federal court authority in determining that Nebraska law did not authorize the Nebraska Supreme Court to reweigh aggravating

_____

[1]The court also rejected Reeves's claim 44, challenging the introduction at trial of Janet Mesner's statements identifying Reeves as her attacker. Reeves v. Hopkins, 871 F. Supp. at 1210. Reeves has not cross-appealed this determination.

[2]The court did not reach claims 5, 6, 26, 27, 34, 36, and 38.

-3-

and mitigating factors in capital cases. Reeves v. Hopkins, 76
F.3d 1424, 1427 (8th Cir.), cert. denied, 117 S. Ct. 307 (1996).
We did not reach Reeves's Beck claim, instead remanding and
instructing the district court to make determinations on the claims
it had not reached. Id. at 1430-31. We expressly noted that we
retained jurisdiction on those issues decided by the district court
that we had not reached, and would consolidate those issues with
any future appeal. Id. at 1431.

On remand, the district court rejected all but one of Reeves's
remaining claims. The court determined that the Nebraska Supreme
Court had resentenced Reeves in Reeves III when it again affirmed
the death penalty on remand from the United States Supreme Court,
but violated due process by failing to give Reeves notice of
resentencing and an opportunity to be heard. Reeves v. Hopkins,
928 F. Supp. 941, 965-66 (D. Neb. 1996).[3]

The State appeals the district court's findings on the due
process claim, and we agree that the court below erred on this
issue. We also conclude, however, that Reeves's Beck claim is
meritorious and that the district court improperly rejected this
claim in its first decision in 1994.

## II.  DISCUSSION

In this section 2254 habeas corpus action, we review the
district court's factual findings for clear error and its legal
conclusions de novo. Culkin v. Purkett, 45 F.3d 1229, 1232 (8th
Cir.), cert. denied, 116 S. Ct. 127 (1995).

---

[3]The district court also concluded that our retention of
jurisdiction in our prior decision rendered it without authority
to consider Reeves's motion to submit new evidence of actual
innocence. Reeves v. Hopkins, 928 F. Supp. at 976. Reeves
appeals this conclusion. Because we grant the writ on other
grounds, we need not reach this issue.

## A.    The Due Process Claim

The district court granted relief on claim 34 of Reeves's petition, in which Reeves claims that:

> The death penalty was unconstitutionally applied to Petitioner in that the Nebraska Supreme Court in resentencing Petitioner on remand denied Petitioner notice and an opportunity to be heard in violation of the Sixth and Eighth Amendments and the [Due Process] and Equal Protection Clauses of the Fourteenth Amendment.

Petitioner's First Amended Petition for Writ of Habeas Corpus, at 37-38.

Reeves's claim involves his state postconviction proceedings. After his convictions and sentences were affirmed on direct appeal in Reeves I, Reeves sought state postconviction remedies. In Reeves II, the Nebraska Supreme Court affirmed denial of postconviction relief.  453 N.W.2d at 388.  On petition for writ of certiorari, the United States Supreme Court vacated Reeves II and remanded for "further consideration in light of Clemons v. Mississippi." Reeves v. Nebraska, 498 U.S. 964 (1990).  In Clemons, the Supreme Court had recently held that a death sentence based in part on an invalidly applied aggravating factor (which the Nebraska court found had occurred in Reeves's case) could be affirmed by an appellate court.  If state law allows, an appellate court in such a case may either: (1) conduct a harmless error analysis; or (2) independently reweigh the applicable aggravating and mitigating circumstances.  494 U.S. at 750, 752.

Reeves claims that when the Nebraska court once again affirmed his sentence in Reeves III, this amounted to a reimposition of the death sentence.  This "resentencing," Reeves argues, was done without Reeves being aware that he would be subject to such resentencing by the state court.  He was thus unable to argue against imposition of the death penalty and was caught by surprise

-5-

when the court affirmed the sentence, rather than remanding to a new sentencing panel.  Reeves claims that this violated his rights under the Fourteenth Amendment to notice and an opportunity to be heard.

On remand, the Nebraska Supreme Court issued an order directing Reeves and the State to submit simultaneous briefs "covering the subject of the remand."  Petitioner's Brief at 2.  According to Reeves, his counsel was uncertain of the meaning of the phrase "the subject of the remand."  Reeves's attorney filed a series of motions with the Nebraska court attempting to clarify the scope of the issues before the court, most of which the court denied,[4] and unsuccessfully sought to clarify the scope of the remand at oral argument.  The district court agreed with Reeves that he "was not provided with adequate notice that he would be sentenced to death."  928 F. Supp. at 961.  The court reasoned that "[h]owever the 20-minute oral argument in Reeves III might otherwise be characterized, we know in retrospect that it was ultimately the one proceeding where it would be determined whether [Reeves's convictions] warranted the death penalty."  Id. at 964.

We part ways with the district court on a fundamental premise: Reeves III simply was not the "one proceeding" where the state determined that Reeves's crimes "warranted the death penalty." Reeves II was Reeves's appeal of his unsuccessful postconviction attack on his convictions and sentence.  After the sentencing panel originally imposed the death sentence, the Nebraska Supreme Court

---

[4]The court granted Reeves's motion to extend oral argument to 20 minutes.  The court denied, without comment, motions: (1) requesting notice if the court "intended to engage in resentencing on appeal"; (2) for an evidentiary hearing to present evidence relevant to resentencing; and (3) to set forth an order of procedure.

-6-

affirmed the sentence on direct appeal in <u>Reeves I</u>.[5]  The United States Supreme Court's remand of <u>Reeves II</u> for reconsideration in light of <u>Clemons</u> did nothing to unsettle the prior conclusion in <u>Reeves I</u>.[6]

It is true that in <u>Reeves III</u> the Nebraska Supreme Court reviewed in some detail its thinking on the propriety of Reeves's sentence.  The court reexamined the applicable aggravating and mitigating factors, and concluded that "[w]e have balanced the aggravating and mitigating factors anew and have determined that the aggravating circumstances outweigh any statutory or nonstatutory mitigating circumstances in this case. . . . Sentences of death remain the appropriate penalties for Reeves." <u>Reeves III</u>, 476 N.W.2d at 841.  However, the court's review was not a "resentencing" because Reeves's sentence had never been voided. We agree with the State that the court's discussion was merely a recasting of its prior conclusions in light of the guidance offered by <u>Clemons</u>.

_____

[5]Reeves argues that in <u>Reeves I</u>, the Nebraska court, after finding that an aggravating factor had been improperly applied by the sentencing panel, affirmed on the basis that some aggravating factors remained, rather than independently reweighing the mix of aggravating and mitigating factors as required by <u>Clemons</u>.  We reject this contention.  The court in <u>Reeves I</u> expressly noted "our analysis is not confined to a mere counting process of aggravating and mitigating circumstances but, rather, to a reasoned judgment as to what factual situations require the imposition of death and which of those can be satisfied by life imprisonment in light of the totality of the circumstances present."  <u>Reeves I</u>, 344 N.W.2d at 448.

[6]Reeves's reliance on <u>Lankford v. Idaho</u>, 500 U.S. 110 (1991), is misplaced.  In <u>Lankford</u>, the original decision of the trial court imposing the death sentence violated due process because the defendant (and even the prosecution) did not know that the trial court was contemplating the death penalty, and neither side addressed it during the sentencing hearing.  <u>Id.</u> at 114-17.  Reeves, however, has been under a final sentence of death since 1984, when <u>Reeves I</u> affirmed his sentence.  He cannot say that the affirmance of his sentence--for the third time--in <u>Reeves III</u> was a surprise.

We also reject Reeves's argument that the Nebraska Supreme Court's conclusion in Reeves III that it was authorized to reweigh aggravating and mitigating factors was a new rule that it announced simultaneous with its application to him. First, it should have been clear to Reeves since Reeves I that the state court believed it had authority to reweigh, since that is exactly what it did on direct appeal in that case. Second, the Nebraska Supreme Court had previously stated that it could "weigh[] anew the aggravating and mitigating circumstances . . . as permitted by Clemons v. Mississippi." State v. Otey, 464 N.W.2d 352, 361 (Neb. 1991). We reject Reeves's argument that the language in Otey is "summary" and does not articulate the court's power to reweigh under Clemons. In any event, since Reeves was not "resentenced" in Reeves III, his "new rule" argument is largely irrelevant.[7]

In sum, the Nebraska Supreme Court did not "resentence" Reeves in Reeves III. Reeves's sentence of death was made final when the court affirmed his convictions and sentence on direct appeal in Reeves I, and the remand of the court's determination in Reeves's postconviction proceedings did nothing to void that sentence. For these reasons, we reject Reeves's due process claim.

---

[7]Reeves also argues that the decision in Reeves III should be treated as a resentencing because the State had, in prior filings in this habeas action, referred to it as such. It is true that a party cannot argue on appeal a legal theory directly contrary to the one advanced in district court. Bissett v. Burlington Northern R.R., 969 F.2d 727, 732 (8th Cir. 1992). We do not believe, however, that the State's mere use of the word "resentence" in discussing other issues in these proceedings constitutes advancement of a legal theory or position. Finally, Reeves asserts that in State v. Moore, 502 N.W.2d 227, 229 (Neb. 1993), the Nebraska Supreme Court itself referred to the "resentencing" it had done in Reeves's appeal. ("As indicated in State v. Reeves . . ., we have the authority to resentence by analyzing and reweighing the aggravating and mitigating factors of the case."). Again, we do not believe that semantic niceties change the nature of the remand in Reeves III. In any event, the court in Moore was referring to its decision in Reeves I, not Reeves III.

-8-

## B.    The Beck Claim

Reeves was charged with two counts of first degree murder under a felony murder theory, for killing during the course of a first degree sexual assault or attempted first degree sexual assault.[8]  Under Nebraska law, first degree murder is punishable by either life imprisonment or by death.  Neb. Rev. Stat. §§ 28-303, 28-105(1).  Reeves requested, and was denied, jury instructions on second degree murder and manslaughter.[9]  The jury was therefore only instructed on the crime of first degree felony murder.  Reeves argues that the refusal of his proposed instructions violated Beck v. Alabama, 447 U.S 625 (1980).  We agree.

_____

[8]Reeves was charged under Neb. Rev. Stat. § 28-303, which provides that:

> A person commits murder in the first degree if he kills another person (1) purposely and with deliberate and premeditated malice, or (2) in the perpetration of or attempt to perpetrate any sexual assault in the first degree, arson, robbery, kidnapping, hijacking of any public or private means of transportation, or burglary . . . .

[9]The applicable statutory provisions are as follows:

**§ 28-304.  Murder in the second degree; penalty.**

(1) A person commits murder in the second degree if he causes the death of a person intentionally, but without premeditation.

**§ 28-305.  Manslaughter; penalty.**

(1)  A person commits manslaughter if he kills another without malice, either upon a sudden quarrel, or causes the death of another unintentionally while in the commission of an unlawful act.

Second degree murder carries a maximum sentence of life imprisonment.  Id. at §§ 28-304(2), 28-105(1).  Manslaughter carries a maximum sentence of twenty years.  Id. at §§ 28-305(2), 28-105(1).

–9–

In Beck, the petitioner was tried on a single count of intentionally killing during the course of a robbery.  Id. at 627.  Under Alabama law, when a jury found a defendant guilty of this charge, it was required by statute to return a sentence of death.  Id. at 628 n.3.  The trial court, however, was the final sentencer and was free to impose the death sentence or a life term.  Id. at 629 n.4.  The statute under which Beck was charged expressly prohibited trial courts from giving instructions on lesser included noncapital offenses, even if the evidence would support a conviction on a lesser included offense.  Id. at 628 & n.3.

The Supreme Court held that in a capital case due process requires that the jury be given the option of convicting the defendant on a lesser included noncapital offense if the evidence would support conviction on that offense.  Id. at 638.  The Court in Beck sought to avoid presenting juries with a "death or nothing" choice between conviction of a capital crime and finding the defendant not guilty.  Faced with such a choice, jurors might decide to acquit, even though they believed that the defendant had committed a crime.  On the other hand, they might convict of the capital crime, even though they felt that the defendant did not deserve the death penalty.  This choice, the Court explained, is unacceptable because "the unavailability of the third option of convicting on a lesser included offense may encourage the jury to convict for an impermissible reason--its belief that the defendant is guilty of some serious crime and should be punished."  Id. at 637.  This risk of such a choice "cannot be tolerated in a case in which the defendant's life is at stake."  Id.  See also Schad v. Arizona, 501 U.S. 624, 646 (1991).  As the Court later explained, "[t]he goal of the Beck rule . . . is to eliminate the distortion of the factfinding process that is created when the jury is forced into an all-or-nothing choice between capital murder and innocence."  Spaziano v. Florida, 468 U.S. 447, 455 (1984).

-10-

The State argues that <u>Beck</u> is inapplicable because the Nebraska Supreme Court has determined that, under state law, there are no lesser included offenses of felony murder. Both before and after Reeves's conviction, the Nebraska court repeatedly made clear its view that in felony murder cases "it is error for the trial court to instruct the jury that they may find defendant guilty of murder in the first degree, guilty of murder in the second degree, or guilty of manslaughter." <u>State v. Montgomery</u>, 215 N.W.2d 881, 883 (Neb. 1974). <u>See also</u> <u>State v. Massey</u>, 357 N.W.2d 181, 185-86 (Neb. 1984) (quoting <u>Reeves I</u>, 344 N.W.2d at 442); <u>State v. Hubbard</u>, 319 N.W.2d 116, 118 (Neb. 1982); <u>State v. McDonald</u>, 240 N.W.2d 8, 14 (Neb. 1976). We are directly faced, therefore, with the question whether the State's prohibition is consistent with <u>Beck</u>.

The State contends that once the Nebraska Supreme Court has determined that felony murder has no lesser included offenses, then Reeves's <u>Beck</u> claim necessarily fails. The State urges us to follow <u>Greenawalt v. Ricketts</u>, 943 F.2d 1020 (9th Cir. 1991), in which the Ninth Circuit rejected an Arizona prisoner's <u>Beck</u> claim. The court in that case reasoned that "Greenawalt was tried solely for felony murder, a crime for which Arizona law recognizes no lesser included offense." <u>Id.</u> at 1029 (citing <u>State v. Greenawalt</u>, 624 P.2d 828, 846 (Ariz. 1981) (<u>en banc</u>). The court concluded on this basis that <u>Beck</u> was inapplicable.

We cannot agree with this interpretation of the <u>Beck</u> doctrine. The State's position would say in effect that <u>Beck</u> means only that a criminal defendant is entitled to instructions on lesser included offenses to which state law says he or she is entitled. But if this were true, then <u>Beck</u> itself would have been decided differently. In <u>Beck</u>, as in this case, state substantive law specifically prohibited the giving of a lesser included offense instruction. The problem was not merely a trial court's decision not to instruct the jury, nor was it Alabama's definition of lesser

-11-

included offenses.  The unacceptable constitutional dilemma was that state law prohibited instructions on noncapital murder charges in cases where conviction made the defendant death-eligible. The prohibition in Reeves's case is based on the Nebraska Supreme Court's pronouncement of state law, rather than upon a statute. But there is no principled reason to distinguish such a prohibition imposed by the state courts from one imposed by the state legislature.[10]  The constitutional violation is the same.

_____

[10]Similarly, the Fifth Circuit has held that the Beck doctrine imposes federal constitutional limits on state law governing when a trial court may refuse to give an instruction on a lesser included offense.  Cordova v. Lynaugh, 838 F.2d 764, 767 (5th Cir. 1988).  The court noted that "[i]f due process is violated because a jury cannot consider a lesser included offense that the `evidence would have supported,'. . . the source of that refusal, whether by operation of state law or refusal by the state trial court judge, is immaterial."  Id. at 767 n.2 (citation to Beck omitted).

We note that in rejecting a petitioner's Beck argument in Blair v. Armontrout, we stated that "Beck does not prescribe a first-degree murder instruction in this case unless first-degree murder is a lesser-included offense of capital murder . . . and the [State] Supreme Court [has held] that first-degree murder [is] not a lesser-included offense of capital murder."  916 F.2d 1310, 1326 (8th Cir. 1990).  In Blair, however, we did not directly face the issue whether Beck could be vitiated by a state's determination that a particular crime has no lesser included offenses.  There was no Beck violation in Blair because: (1) the jury had both the option and power to impose a life sentence, rather than a death sentence; and (2) the defendant was given jury instructions on both second degree murder and manslaughter.  Id.  Neither is true of this case.

We made a similar statement regarding a state's definitions of lesser included offenses in Williams v. Armontrout, 912 F.2d 924, 928 (8th Cir. 1990) (en banc).  In that case, however, Beck did not apply because the evidence would not have supported a conviction for the charge for which the defendant requested an instruction.  Id. at 929.  Williams was thus squarely within the limitation on Beck clarified by Hopper v. Evans, 456 U.S. 605, 611 (1982) (holding that Beck requires instructions on noncapital offenses only when the evidence would support a conviction on that charge).

-12-

We believe that in arguing to the contrary, the State misreads the Supreme Court's clarifications of the <u>Beck</u> doctrine. In <u>Hopper v. Evans</u>, the Court held that under <u>Beck</u> "due process requires that a lesser included offense instruction be given <u>only</u> when the evidence warrants such an instruction." 456 U.S. 605, 611 (1982) (emphasis in the original). In <u>Spaziano</u>, the Court held that <u>Beck</u> did not apply when the statute of limitations had run on all lesser included offenses and the defendant refused to waive the statute. 468 U.S. at 456-57. The Court stated that "[w]here no lesser included offense exists, a lesser included offense instruction detracts from, rather than enhances, the rationality of the process. <u>Beck</u> does not require that result." <u>Id.</u> at 455.

The Ninth Circuit in <u>Greenawalt</u> cited <u>Spaziano</u> to support its conclusion that Arizona's nonrecognition of any lesser included offenses foreclosed a <u>Beck</u> claim. <u>Greenawalt</u>, 943 F.2d at 1029. We believe that this reads <u>Spaziano</u> much too broadly. In <u>Spaziano</u>, the defendant <u>could not have been convicted</u> of any lesser included offenses because the applicable statutes of limitation had all run and the defendant refused to waive them. The Court found that instructing the jury on a charge that could not have resulted in a conviction would compound the distortion of factfinding that troubled it in <u>Beck</u>:

> Requiring that the jury be instructed on lesser included offenses for which the defendant may not be convicted . . . would simply introduce another type of distortion into the factfinding process.
>
> . . . <u>Beck</u> does not require that the jury be tricked into believing that it has a choice of crimes for which to find the defendant guilty, if in reality there is no choice.

<u>Id.</u> at 455-56. <u>Spaziano</u> does not stand, therefore, for the proposition that state law can foreclose <u>Beck</u> claims by declaring that felony murder has no lesser included offenses; this is exactly

-13-

what the Alabama legislature had done in Beck, after all.[11] Spaziano stands, rather, for the eminently sound notion that juries should not be mislead into "convicting" someone of a charge for which he or she cannot be convicted. There is no question of such trickery in this case. Reeves could have been convicted and sentenced for either second degree murder or manslaughter.

The State's rationale for prohibiting instructions for noncapital murder in felony murder cases further supports our conclusion. The Nebraska Supreme Court has said that felony murder differs from other murder because it requires no showing of any intent to kill: "The turpitude involved in the [underlying felony] takes the place of intent to kill or premeditated malice, and the purpose to kill is conclusively presumed from the criminal intention required for [the underlying felony]." Reeves I, 344 N.W.2d at 442 (citations omitted). Thus, a finding that Reeves intended the underlying felony (actual or attempted first degree sexual assault) takes the place of any showing that Reeves intended to kill. At oral argument, the State reiterated that the difference between the mental states required for felony murder and premeditated first degree murder is the basis for the prohibition on lesser included offense instructions in felony murder cases.

There is nothing necessarily unconstitutional with the State's definition of the mental culpability required for a felony murder conviction. However, the death penalty cannot be imposed on a defendant without a showing of some culpability with respect to the killing itself. Enmund v. Florida, 458 U.S. 782, 801 (1982).

---

[11]The State argues that "but for the specific statute struck down which prohibited such jury instructions [on lesser included offenses], there existed, under Alabama law, lesser included offenses of the crime with which Beck was charged." State's Reply Brief (1995) at 11-12. But this is merely to say that "if state law had not prohibited an instruction, it would have permitted it." This is, of course, true. But it is equally true of Nebraska law.

Before a state can impose the death penalty, there must be a showing of both major participation in the killing and reckless indifference to human life. Tison v. Arizona, 481 U.S. 137, 158 (1987). Enmund and Tison are thus independent constitutional requirements of the mental culpability a state must prove if it is to impose a death sentence; if the death sentence is to be imposed, the state must necessarily produce some evidence of intent with respect to the killing. Nebraska's rationale for prohibiting lesser included offense instructions in felony murder cases thus disappears when the defendant is sentenced to death. We are led to the conclusion that the State may not, consistent with the Constitution, bar an instruction on noncapital homicide, in a felony murder case where the death sentence is imposed, on the basis that felony murder requires no showing of intent or, at least, a reckless indifference to the value of human life. To hold otherwise would mean that the State could avoid Beck by claiming that it need show no intent or reckless indifference with respect to the killing, yet could simultaneously avoid Enmund by adducing precisely such evidence.

We do not suggest that the State may not impose the death penalty pursuant to a felony murder conviction. We mean to say only that the State's prohibition on instructions on noncapital charges in felony murder cases is inconsistent with Beck, and that its rationale for the prohibition would put Beck at odds with Enmund. In Greenawalt, the Ninth Circuit reads Enmund to apply only in situations of "accomplice felony murder" where the Eighth Amendment requires a specific showing of mens rea before the death penalty may be imposed. 943 F.2d at 1028. We think this unduly narrows the Supreme Court's holdings in Enmund as well as Tison, especially in cases such as this. Reeves's insanity and diminished capacity defenses raise the same "mental state" concerns considered by the Court in both Enmund and Tison; indeed, the facts of this case and Reeves's defenses indicate the need for particular care

-15-

that Reeves's "punishment . . . be tailored to his personal responsibility and moral guilt."  Enmund, 458 U.S. at 801.

The death penalty concerns expressed in Enmund and Tison lie at the core of the Beck doctrine.  As the Court explained in Hopper, Beck teaches that the Eighth and Fourteenth Amendments require that the death penalty must be "channeled so that arbitrary and capricious results are avoided."  456 U.S. at 611.  We believe that Reeves's case comes within Beck and Hopper.  The facts would have supported a conviction for either second degree murder or manslaughter, and unlike in Spaziano, Reeves could have been convicted and sentenced for those crimes.  Instead, Reeves's jury was faced with a stark choice:  convict Reeves of capital murder or acquit him altogether.[12]  State law, whether expressed by a statute or by a court, may not prohibit an instruction on a noncapital charge that the evidence supports when the defendant is subsequently sentenced to death.[13]  We therefore hold that the trial

---

[12]Furthermore, the "death or acquit" dilemma may have been exacerbated in Reeves's case.  Reeves presented an insanity defense, but the trial court refused to instruct the jury that an acquittal by reason of insanity would not have resulted in Reeves's release.  In addition, the prosecutor erroneously told the jury in summation that an acquittal would mean that Reeves would "walk out of this courtroom a free man."  While the district court was unsure whether the prosecutor's statement referred to Reeves's insanity defense or merely to the effect of an acquittal on the merits, the Nebraska Supreme Court stated in Reeves I that "the statement made by the prosecutor was not an entirely correct statement of the law."  344 N.W.2d at 443.  While we agree with the district court that neither the refused insanity instruction nor the prosecutor's misstatement is sufficient in itself to violate due process, infra at 18-19, the effect could only have heightened the "death or acquit" dilemma.

[13]The State argues that Beck involved a statute that automatically imposed the death sentence, whereas Reeves's jury had no involvement in sentencing.  But the Alabama statute in Beck was not a "mandatory death" statute; the judge had final sentencing authority, and was free to reject the death penalty.  Furthermore, Reeves correctly argues that when Beck was decided, the Supreme Court had already declared "mandatory death" statutes

-16-

court's refusal to grant Reeves's request for instructions on second degree murder and manslaughter violated Beck v. Alabama.

## C.   Reeves's Other Claims

The only claims Reeves presents on cross-appeal are those numbered 20, 20(a), 20(c), 22, and 23. We agree with the district court's dismissal of each of those claims.[14]

*Claims 20 and 20(a):*  Reeves claims that the trial court erred in its instructions on his insanity defense and on the culpability the State needed to prove to establish the predicate felony (first degree sexual assault) of the felony murder charge.  The district court rejected Reeves's argument that the trial court's instructions established invalid conclusive presumptions of fact and relieved the prosecution of its burden of proof of elements of the crime charged, in violation of Sandstrom v. Montana, 442 U.S. 510 (1979).  We agree with the district court that the trial court properly instructed the jury, and did not so shift the burden of proof.

---

unconstitutional in Woodson v. North Carolina, 428 U.S. 280, 305 (1976).  This case is like Beck:  the jury had no ultimate control over the imposition of a death sentence and could only choose to convict Reeves of a death-eligible crime or to acquit him.

[14]In its 1994 order granting habeas, the district court considered and rejected Reeves's claims numbered 20, 20(a), 20(c), 22, 23, and 44.  On remand after we reversed, the district court considered the remaining claims (claims 5, 6, 26, 27, 34, 36, and 38) that it had not reached in its first ruling.  Claim 34 is the due process claim that the district court granted relief on, which we discuss and reject in part II.A.  In the prior appeal before this court, Reeves did not cross-appeal the dismissal of claim 44, nor does he now cross-appeal the district court's conclusions on claims 5, 6, 26, 27, 36, and 38.  Reeves has therefore abandoned those claims and we need not consider the district court's dismissal of them.

*Claim 20(c):* Reeves claims that the failure to give an instruction on noncapital homicide in his case violated equal protection, because defendants charged with premeditated first degree murder are entitled to such an instruction under Nebraska law. We agree with the district court that Reeves did not fairly present this argument in state court, and that under Nebraska law Reeves has abandoned this claim. See State v. Evans, 338 N.W.2d 788, 795 (Neb. 1983). Reeves has thus defaulted review of this claim in federal habeas proceedings, Morris v. Norris, 83 F.3d 268, 270 (8th Cir. 1996), and has made no showing of cause to excuse his default. Wainwright v. Sykes, 433 U.S. 72, 87 (1977).

*Claim 22:* Reeves claims that the trial court erred by refusing his requested instruction on diminished capacity. We agree with the district court that the trial court's instructions on intoxication and insanity covered largely the same ground as the requested instruction, and that the refusal thus did not result in a miscarriage of justice. Closs v. Leapley, 18 F.3d 574, 579 (8th Cir. 1994).

*Claim 23:* In rebuttal closing argument, the prosecutor told the jury that if "[t]he State doesn't prove this case beyond a reasonable doubt, then the State shouldn't win and this defendant should walk out of this courtroom a free man." Reeves v. Hopkins, 871 F. Supp. at 1207. The trial court denied Reeves's motion for a mistrial based on this statement. Reeves asserts that this comment gave the jury the false impression that an acquittal on the basis of insanity would result in Reeves's release. This, Reeves argues, was so misleading as to unfairly prejudice his trial.

The district court noted that this reference was one sentence in the midst of a forty-eight minute argument, and occurred on a day where the jury heard more than four hours of argument from both the prosecution and defense. The court found that the context, ambiguity, and passing nature of the remark indicated little

-18-

likelihood that it could have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Pickens v. Lockhart, 4 F.3d 1446, 1453 (8th Cir. 1993) (citations omitted).  We agree that Reeves has not shown that this isolated remark constituted constitutional error.

**D.   Relief**

Having found Reeves's Beck claim meritorious, we must still determine what relief is appropriate.  We have previously held that Beck only applies in cases where the defendant is in fact sentenced to death.  Pitts v. Lockhart, 911 F.2d 109, 112 (8th Cir. 1990). The Beck violation in this case thus can be cured in one of two ways:  (1) by granting Reeves a new trial; or (2) by resentencing Reeves to life imprisonment, which is a statutorily authorized sentence for felony murder.[15]  We therefore find it appropriate to grant a conditional writ of habeas corpus:  Reeves's conviction will be vacated subject to a new trial unless, within 180 days from the issuance of the mandate, his death sentence is modified to life imprisonment.

**III. CONCLUSION**

We find that the trial court's refusal to instruct the jury on noncapital murder charges violated Beck v. Alabama, and that the district court thus erred in dismissing Reeves's claim 20(b).  We conditionally grant Reeves's petition for the writ of habeas corpus:  his conviction will be vacated subject to a new trial unless the State resentences Reeves to life imprisonment within 180 days.  Because we conclude that Reeves's due process argument is groundless, we reverse the district court's finding on claim 34. We affirm the district court's findings dismissing all of Reeves's other claims.

---

[15]See Neb. Rev. Stat. §§ 28-303, 28-105(1).

BRIGHT, Circuit Judge, concurring separately.

Judge Beam's well written opinion persuasively and logically explains that the application of <u>Beck v. Alabama</u>, 447 U.S. 625 (1980), requires that we remand this case for appropriate relief under a conditional writ of habeas corpus.  I agree.

Having directed the issuance of a writ of habeas corpus, which will require the State of Nebraska either to retry Reeves or sentence him to life imprisonment, I would not reach the due process claim discussed in part II A of the court's opinion.  In all other respects, I concur.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.